# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1576

———————

United States of America,          *
                                     *

        Appellee,             *

                                     *   Appeal from the United States

     v.                          *   District Court for the Southern

                                     *   District of Iowa.

Charles William Ray,          *

                                     *

        Appellant.          *

———————

Submitted: October 19, 2004
Filed: June 14, 2005

———————

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and RILEY, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Charles Ray entered a conditional guilty plea to one count of possession of a firearm after a misdemeanor conviction for a crime of domestic violence. *See* Fed R. Crim. P. 11(a)(2); 18 U.S.C. § 922(g)(9). Consistent with the plea's condition, Mr. Ray appeals the decision of the district court[1] that the warning on his federal firearm license (FFL) was insufficient as a matter of law to support an estoppel-by-entrapment defense. He also appeals the district court's determination of his sentence. We affirm.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

I.

Mr. Ray, who was a federally-licensed firearms dealer, contends that the FFL supported an estoppel-by-entrapment defense. The FFL contains a warning which begins, "This license is not a permit to carry a concealed weapon, nor does it confer the right or privilege to conduct business contrary to State law or any other law." Following this statement are six conditions (*e.g.*, being a fugitive from justice or an unlawful drug user) that cause the license holder to be "prohibited from engaging in the business otherwise authorized by this license." The warning does not state whether the list of conditions is exhaustive or illustrative.

After Mr. Ray obtained his FFL, he was convicted in state court of misdemeanor domestic assault. Federal law prohibits a person who "has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. 18 U.S.C. § 922(g)(9). When the Bureau of Alcohol Tobacco and Firearms got word that Mr. Ray had a number of firearms stored in his apartment, agents obtained and executed a search warrant and found seventy-two guns.

A grand jury returned a one-count indictment charging Mr. Ray with violating § 922(g)(9). Mr. Ray informed the government that he planned to assert an estoppel-by-entrapment defense at trial. The substance of his planned defense was that the warning on the FFL indicates that it is legal for him to possess a firearm because it does not say that a person convicted of a misdemeanor crime of domestic violence cannot possess one. The government filed a motion in limine asking the court to bar Mr. Ray from introducing any evidence about his FFL. It argued that the parties agreed on the relevant facts and that these facts did not suffice to support the estoppel-by-entrapment defense or Mr. Ray's proposed jury instruction on that defense.

The court denied the government's motion. It decided that Mr. Ray could introduce some evidence about his FFL, but stated that, if requested by the

government, it would "explain to the jury by a limiting instruction that the defendant had no right to rely on the FFL in possessing the firearms." Relatedly, the court concluded that the FFL did not suffice to justify submitting an instruction on estoppel by entrapment to the jury. It acknowledged, though, that an entrapment instruction would be appropriate if "the evidence at trial in contrast to the record presented on this motion shows a government official or agency made affirmative misstatements on which the defendant relied."

Mr. Ray entered a conditional guilty plea. *See* Fed. R. Crim. P. 11(a)(2). The rule provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty ... reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." *Id.* Mr. Ray's plea reserved the right to appeal the district court's decision that his proposed defense was untenable.

Before turning to the merits of Mr. Ray's appeal, we address the government's assertion that the district court's ruling on the motion in limine was not a ruling on a pretrial motion within the meaning of Rule 11(a)(2). The government offers two arguments to support this contention. The first is that the judge's decision on the defense and the instruction was not a definitive ruling. The government does not embellish this argument beyond providing a long excerpt from the district court's ruling on the motion in limine. Presumably, though, the government means to imply that a ruling which is not definitive is not an "adverse determination" under Rule 11(a)(2). Its second argument is that "it is impossible to meaningfully assess the impact of a potential jury instruction when there was no trial and no evidence considered by the jury"; *i.e.*, as the government otherwise puts it, "[h]ad the case gone to trial, it is possible that Ray might have decided not to put on any testimony ... regarding his alleged intention to argue his reliance on the ... FFL, in which case the entire issue would have been irrelevant."

We see two arguments in support of the proposition that the court's ruling was not definitive. The first is that the court mentioned that a defense of estoppel by entrapment might be available on a different record. But the fact that the court admitted that it might decide the issue differently if the defendant were to produce different evidence does not mean that the court did not render a definitive ruling based on the evidence before it. The second argument is that the court equivocated because it stated that it would instruct the jury that the defendant had no right to rely on the FFL only if the government requested that it to do so. Whether this statement is equivocal is irrelevant, however, because the judge unequivocally stated that he would not instruct the jury on Mr. Ray's proposed defense, and a judge's refusal to instruct a jury on a defense is the equivalent of holding that a defense is untenable. *See United States v. Benning*, 248 F.3d 772, 775 (8th Cir. 2001), *cert. denied*, 534 U.S. 922 (2001); *United States v. Santiago-Godinez*, 12 F.3d 722, 726 (7th Cir. 1993), *cert. denied*, 511 U.S. 1060 (1994).

Rule 11(a)(2) forecloses the government's argument that Mr. Ray's appeal is speculative. The gist of the government's argument is that the appeal is based on speculation about what might have happened at trial and so is not an appropriate subject for review. This argument misses the mark. Mr. Ray's appeal is based on a legal decision that the district court made on a pretrial motion, not on what he thinks might have happened at trial. Rule 11(a)(2) expressly permits defendants to appeal from pretrial motions. The appeal is speculative only to the extent that any issue decided in a motion in limine is speculative (*i.e.*, because it might not have arisen at trial). Rule 11(a)(2) establishes, however, that issues decided in motions in limine are not inherently too speculative for appeal. In fact, many appellate courts have, pursuant to this rule, reviewed district courts' pretrial decisions on the availability of defenses. *See, e.g.*, *Benning*, 248 F.3d at 775; *Santiago-Godinez*, 12 F.3d at 725.

We turn now to the merits of Mr. Ray's appeal. In order to present a defense of estoppel by entrapment, Mr. Ray would have to show that the government assured

-4-

him that certain conduct was legal and that he initiated or continued that conduct because he reasonably relied on the government's statement. *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995). The government must have affirmatively misled the defendant for the defendant to put forth a viable defense of entrapment by estoppel; an incomplete explanation of the law does not suffice. *Benning*, 248 F.3d at 775-76.

Mr. Ray maintains that the warning on the FFL affirmatively misstates the law for purposes of estoppel by entrapment. The difficulty with the warning, he argues, is that it does not state that the six listed conditions are illustrative, rather than exhaustive, and people presume that the express mention of things excludes any other things which are not mentioned.

(The parties gloss over the fact that the license refers to whether the licensee may "engag[e] in the business" of selling firearms, and not whether he or she may possess them. We assume that they do so based on the idea that the greater includes the lesser; that is, if the license declares that Mr. Ray is allowed to buy and sell these weapons, then it also implicitly instructs him that he is allowed to possess them. We assume that the parties' position on this matter is reasonable.)

We hold that the FFL does not support an estoppel-by-entrapment defense. Stripped to its core, Mr. Ray's argument is that the warning on the license does not sufficiently explain the law, *i.e.*, the warning does not state that the list of conditions is illustrative rather than exhaustive. But as we have said, an incomplete explanation of law cannot support an estoppel-by-entrapment defense. *Benning*, 248 F.3d at 776. The reason is that contrary to Mr. Ray's suggestion, it is not the law that a person is presumed to know what is illegal based only on what the government tells him. Rather, people are generally presumed to be aware of the criminal laws. *See Cheek v. United States*, 498 U.S. 192, 199 (1991). For Mr. Ray to have a viable defense of entrapment by estoppel, then, there must have been an affirmative misrepresentation.

-5-

*See Benning*, 248 F.3d at 775. There was no affirmative misrepresentation here: The license does not say that a person who has been convicted of a misdemeanor crime of domestic violence can possess a firearm (or anything like that).

The Ninth Circuit's holding in *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000) (per curiam), *cert. denied*, 531 U.S. 892 (2000), is instructive here. In that case, the defendant returned to the United States more than five years after being deported, and he maintained that he did so in reliance on an Immigration and Naturalization Service form. The form stated that "any deported person who within five years returns without permission is guilty of a felony." *Id.* It did not say that returning more than five years after being deported is a felony, though it is. *See* 8 U.S.C. § 1326. The court held that the form did not contain an affirmative misstatement sufficient to establish estoppel by entrapment because it "did not expressly tell the defendant that it was lawful for him to return to the United States after five years." *Ramirez-Valencia*, 202 F.3d at 1109. We think that this reasoning is sound.

II.

We next address the two sentencing issues raised by this case. The first is whether the district court plainly erred when it sentenced Mr. Ray pursuant to U.S.S.G. § 2K2.1(a)(4)(B). The second is whether the district court plainly erred by sentencing Mr. Ray pursuant to the mandatory guideline regime instead of the advisory regime established in *United States v. Booker*, 125 S. Ct. 738 (2005).

Section 2K2.1(a)(4)(B) of the sentencing guidelines calls for a base offense level of 20 if a person prohibited from possessing firearms possessed a firearm "described in ... 18 U.S.C. § 921(a)(30)," which, after Mr. Ray was sentenced, passed out of the United States Code as a result of the sunset provision in the so-called assault-weapons ban of which it was a part. Section 921(a)(30) described "semiautomatic assault weapon[s]," like Kalashnikovs and UZIs. 18 U.S.C.

§ 921(a)(30) (2000). The indictment lists the weapons that Mr. Ray possessed, including five firearms that were described by § 921(a)(30). At his change-of-plea hearing, Mr. Ray admitted that he possessed all of the weapons listed in the indictment. The district court therefore set Mr. Ray's base offense level at 20.

Mr. Ray argues that the court erred because § 2K2.1(a)(4)(B) applies only to individuals who possessed assault weapons that were illegal under the (now defunct) assault-weapons ban, and his were not. Under 18 U.S.C. § 922(v)(1) (2000), a provision of the ban, it was a crime to possess assault weapons of the type described in § 921(a)(30). Section 922(v)(2) provided, however, that "[p]aragraph [v](1) shall not apply to the possession ... of any semiautomatic assault weapon otherwise lawfully possessed under Federal law on the date of the enactment of this subsection." In other words, if a person lawfully possessed the assault weapon at the time that § 922(v)(1) was enacted, then there was no crime. Mr. Ray contends that he lawfully possessed all five of the semiautomatic assault weapons when § 922(v)(1) was enacted, and as such did not violate that statutory provision. Since he did not violate § 922(v)(1) by possessing these firearms, he continues, it makes no sense to increase his punishment for possessing them. He asserts in his brief that "§ 2K2.1(a)(4)(B) obviously targets possession of illegal weapons, as it references illegal weapons statutes." He adds that insofar as § 2K2.1(a)(4)(B) punishes people for the possession of so-called pre-ban weapons – Mr. Ray's base offense level would be 14 if § 2K2.1(a)(4)(B) did not apply, *see* § 2K2.1(a)(6) – it contravenes Congress's intent not to punish people for possessing such weapons. Mr. Ray did not challenge the application of the guidelines provision in the district court, so we review the district court's decision under the plain error standard. *See generally United States v. Olano*, 507 U.S. 725, 731-37 (1993).

We conclude that the district court did not err in applying § 2K2.1(a)(4)(B). The guidelines do not provide that § 2K2.1(a)(4)(B) applies only if possession of the weapons described in § 921(a)(30) also violated § 922(v)(1). And the sentencing

commission expressed its willingness to limit § 921(a)(30)'s effect on sentences when it wanted to, noting that "a 'firearm described in 18 U.S.C. § 921(a)(30) ... does not include a weapon exempted under the provisions of 18 U.S.C. § 922(v)(3)." U.S.S.G. § 2K2.1 comment. (n.2). Section 922(v)(3) stated that § 922(v)(1) did not apply to certain listed firearms or to firearms that "(i) [are] manually operated by bolt, pump, lever, or slide action, (ii) [have] been rendered permanently inoperable, or (iii) [are] antique firearm[s]." Also, no language in § 922(v)(2) read as an exception to any sentencing guideline; that provision simply stated that a person should not be punished under § 922(v)(1) for possessing weapons excepted by the terms of § 922(v)(2).

Section 922(v)(2) and the guidelines, thus, do not conflict. In *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997), the Supreme Court concluded that because a statute and a guideline dictated different sentences for the same people, the statute trumped the guideline. Here there is no conflict. It is sensible to read § 922(v)(2) as creating an exception for pre-ban weapons only with respect to the separate crime of § 922(v)(1), and not with respect to § 2K2.1(a)(4)(B). Through § 922(v)(2), Congress authorized people who had not otherwise lost their right to possess firearms to keep semiautomatic weapons that they lawfully possessed before the ban. *United States v. Metheney*, No. 00-4435, 2001 WL 324621, at * 2 (4th Cir. April 4, 2001) (unpublished per curiam), *cert. denied*, 534 U.S. 902 (2001). Through § 2K2.1(a)(4)(B), the sentencing commission decided to punish more severely the possession of semiautomatic firearms, even those of the pre-ban variety, by a different group of people, namely those who have otherwise lost the right to possess firearms. *Id.* (The commission's decision makes sense, given that semiautomatic weapons are likely more dangerous than other kinds of weapons. *United States v. Vega*, 392 F.3d 1281, 1282-83 (11th Cir. 2004) (per curiam).)

A majority of the courts that have addressed the issue have held that § 922(v)(2) is not an exception to § 2K2.1(a)(4)(B) or other like provisions. *Vega*,

392 F.3d at 1282-83; *United States v. Emerson*, No. 03-10104, 2004 WL 180360, at * 3 (5th Cir. Jan. 28, 2004) (unpublished per curiam); *United States v. Hayes*, Nos. 02-4597/4605/4610/4651, 2003 WL 21436994, at * 2 (4th Cir. June 23, 2003) (unpublished per curiam); *Metheney*, 2001 WL 324621, at * 2. At one point, the Eleventh Circuit held that § 922(v)(2) applied to such provisions, *United States v. Vega*, 365 F.3d 988, 989-90 (11th Cir. 2004), but it has since reversed course and vacated its earlier opinion, *Vega*, 392 F.3d at 1282-83. The Sixth Circuit has concluded that § 922(v)(2) applies to such provisions, *United States v. O'Malley*, 332 F.3d 361, 363 (6th Cir. 2003) (per curiam), but the government in *O'Malley* conceded the point.

We conclude as well that the district court did not err by sentencing Mr. Ray under the mandatory-guidelines regime. To demonstrate an entitlement to plain-error relief, Mr. Ray would have to show, based on the record as a whole, that there is a reasonable probability that he would have received a more favorable sentence had the judge sentenced him under the advisory guidelines system. *United States v. Pirani*, 406 F.3d 543, 547, 551-52 (8th Cir. 2005) (en banc). Mr. Ray cannot make this showing. The only evidence that the judge might have given him a lower sentence under the new system is that the judge sentenced him to the bottom of the guidelines range. Under *Pirani*, however, that is not enough to carry the defendant's burden. *Id.* at 553.

III.

For the reasons given, we affirm Mr. Ray's conviction and sentence.

————————————