RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*

EDUARDO VASQUEZ-MARTINEZ,
                    *Defendant-Appellant.*

> No. 08-5977

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 07-00036-001—Harry S. Mattice, Jr., District Judge.

Decided and Filed: August 13, 2010

Before: CLAY and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Bryan H. Hoss, DAVIS & HOSS, P.C., Chattanooga, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. When Eduardo Vasquez-Martinez arrived at the residence of a man to whom he had sold methamphetamine in the past, the police by happenstance were conducting a search of the man's apartment. Vasquez-Martinez quickly drove off upon spotting the police. After the apartment resident identified Vasquez-Martinez's pickup truck as belonging to the resident's drug supplier

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

from whom he was expecting a delivery that day, the police gave chase. They caught up with Vasquez-Martinez in a nearby restaurant parking lot. An investigative stop and a search of Vasquez-Martinez's vehicle following a drug-dog alert revealed the presence of methamphetamine, drug paraphernalia, and a loaded revolver, all of which resulted in Vasquez-Martinez's arrest.

Vasquez-Martinez moved to suppress the evidence found during the search, but the district court denied his motion. He subsequently pled guilty to conspiracy to distribute methamphetamine and to possession of a firearm in furtherance of that crime. Vasquez-Martinez now challenges the district court's denial of his suppression motion. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Factual background

On March 5, 2007, officers with the Bradley County (Tennessee) Sheriff's Department monitored the purchase of methamphetamine by a confidential informant from Christopher Maldonado at the latter's residence in Cleveland, Tennessee. Three days later, on the evening of March 8, officers with the Sheriff's Department and with the Cleveland Police Department executed a search warrant at Maldonado's apartment. The officers discovered 15 grams of methamphetamine, digital scales, and a loaded gun during the search. They promptly arrested Maldonado.

Some of the officers, including Detective Carl Maskew from the Sheriff's Department, questioned Maldonado while the search was taking place. Maldonado informed Detective Maskew that he had a drug supplier called "Lilo," whom Maldonado later identified as Vasquez-Martinez. He also showed Detective Maskew a photo of Lilo that was taken on the cell phone of Amanda Wampler, Maldonado's girlfriend. According to Maldonado, he was expecting Lilo to arrive at the apartment with a delivery of drugs sometime that evening.

While Maldonado was disclosing this information, Detective Stacy Smith and three other officers with the Cleveland Police Department were standing just outside of

the apartment. Detective Smith observed a vehicle pull into the building's parking lot and yelled to the officers inside of the apartment that "a red-colored Chevrolet pick-up truck" had arrived. Maldonado, who was unable see the truck pull in, overheard this comment and replied, "that's him." The officers understood Maldonado's comment to mean that Lilo was on the premises.

Upon seeing the officers standing outside of the apartment, the driver of the red pickup truck immediately backed out of the parking lot and drove away. Two officers gave chase and eventually caught up to the pickup truck in the parking lot of a Denny's Restaurant located approximately three-quarters of a mile from Maldonado's apartment building. Believing Vasquez-Martinez to be in possession of a weapon, the officers patted him down. Detective Maskew, who had encountered Vasquez-Martinez five months earlier (in November 2006) during the search of a hotel room pursuant to a warrant, then arrived on the scene. He recognized Vasquez-Martinez from the November 2006 incident and from seeing the photo of Vasquez-Martinez on Wampler's cell phone.

Presumably in light of this recognition, Detective Maskew's first action upon arriving at the parking lot was to ask Vasquez-Martinez: "Do you remember me?" Vasquez-Martinez replied that he did. Detective Maskew then took Vasquez-Martinez's driver's license back to Maldonado's apartment, where Maldonado confirmed that Vasquez-Martinez was indeed Lilo. Upon returning to the Denny's parking lot, Detective Maskew promptly read Vasquez-Martinez his *Miranda* rights.

Shortly after Detective Maskew's initial arrival at the Denny's parking lot, another officer arrived on the scene to conduct a canine drug-sniff of Vasquez-Martinez's pickup truck. The canine alerted to the driver's side front door three times, indicating the presence of narcotics at that location. A subsequent search of Vasquez-Martinez's truck revealed methamphetamine, a loaded 9-millimeter handgun, and various drug paraphernalia hidden inside of a wall panel on the driver's side front door. The officers then arrested Vasquez-Martinez and placed him in handcuffs.

**B.    Procedural background**

A grand jury indicted Vasquez-Martinez on charges of conspiracy to distribute methamphetamine, possession of methamphetamine with the intent to distribute the drug, and illegal possession of a firearm. Vasquez-Martinez subsequently filed a motion to suppress the evidence found during the search of his pickup truck, arguing that the police (1) arrested him without probable cause upon spotting him in the Denny's parking lot, and (2) illegally detained him for an unreasonable amount of time. Following an evidentiary hearing, the district court denied the motion, finding that the police initially detained Vasquez-Martinez in the parking lot pursuant to an investigative stop and that the length of the detention was not unreasonable.

Vasquez-Martinez, in exchange for the government's dismissal of the remaining counts, then pled guilty during a rearraignment hearing to the following two counts of the seven-count indictment: (1) conspiracy to distribute 50 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 846, and (2) possession of a firearm in furtherance of that crime, in violation of 18 U.S.C. § 924(c). No written plea agreement was entered into between Vasquez-Martinez and the government.

Before accepting the guilty plea, the district judge asked Vasquez-Martinez and his attorney several questions. The judge first received confirmation from Vasquez-Martinez's attorney that Vasquez-Martinez was competent to enter the plea. Then the judge informed Vasquez-Martinez that, by entering a plea of guilty, he was forfeiting several constitutional rights, including the presumption of innocence, the right to assistance of counsel at trial, and the right to cross-examine witnesses testifying against him. The judge next verified that Vasquez-Martinez had not been coerced into pleading guilty. Towards the end of the hearing, the judge listed several other rights that Vasquez-Martinez would be waiving by entering his guilty plea, such as the right to vote, hold public office, serve on a jury, and possess a firearm. The judge concluded that Vasquez-Martinez "is fully competent and capable of entering an informed plea, and that his plea of guilty is a knowing and voluntary plea." At no point during the hearing did

Vasquez-Martinez seek to enter a conditional plea of guilty that would have reserved his right to challenge on appeal the denial of his motion to suppress.

Approximately six months later, the district court sentenced Vasquez-Martinez to 168 months of imprisonment. This sentence was at the bottom of the Sentencing Guidelines range recommended by the Presentence Report and adopted by the court.

Vasquez-Martinez now appeals the district court's denial of his motion to suppress. In response, the government asserts that we lack jurisdiction to hear the appeal because Vasquez-Martinez did not reserve his right to challenge the denial of his pre-plea motion.

## II. ANALYSIS

"It is elemental that a guilty pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty" pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001). Rule 11 provides, in pertinent part, that

> [w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

Fed. R. Crim. P. 11(a)(2). This Rule "places an affirmative duty on the defendant to preserve *all* potential collateral challenges through the [Rule's] preservation mechanism." *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991) (emphasis in original). The Rule's writing requirement is excused only where a defendant "made it clear that he wished to preserve his right to appeal, the government acknowledged that he could appeal, and the court accepted that [reservation of appellate rights]." *United States v. Young*, 580 F.3d 373, 376 (6th Cir. 2009) (citation omitted).

In the present case, Vasquez-Martinez pled guilty at his rearraignment hearing and at no point during the proceedings signed a written plea agreement. Nor did he

make any attempt to enter a conditional plea of guilty that would have reserved his right to appeal the denial of his motion to suppress.

Vasquez-Martinez nevertheless argues that any waiver of his appellate rights is unenforceable because it was not knowing and voluntary. In support of his argument, Vasquez-Martinez relies on Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure. This Rule states that, before accepting a guilty plea, the district court must inform a defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Vasquez-Martinez contends that the district court violated Rule 11(b)(1)(N) by failing to inform him of the consequences of his guilty plea.

His argument is without merit, however, for two reasons. First, Rule 11(b)(1)(N) is applicable only to a waiver in a "plea-agreement provision," of which there is none in the present case. Second, the sole obligation that the Rule places on the district court is to apprise a defendant of any plea-agreement provision waiving the right to appeal a *sentence*. "There is . . . no similar provision requiring that a defendant be informed of [a waiver of] the right to appeal *prior* adverse decisions." *United States v. Cabrera*, No. 09-2553-cr, 2010 WL 2094279, at *1 (2d Cir. May 26, 2010) (emphasis in original). This disparity stems from the fact that a waiver of the right to appeal a sentence is prospective in nature, whereas a waiver of the right to appeal a pre-plea denial of a suppression motion applies to a court ruling that has already taken place. *Id*.

Our own caselaw reflects this distinction between waivers of appellate rights related to sentences as opposed to those related to pre-plea rulings. *See, e.g.*, *Young*, 580 F.3d at 376 (holding that, in the absence of any written plea agreement and any specific reservation of the right to challenge the district court's suppression ruling, the defendant had waived the issue on appeal); *United States v. Simmons*, 329 F. App'x 629, 631 (6th Cir. 2009) (same). By contrast, in those instances in which we have held there to be a Rule 11(b)(1)(N) violation, the defendant was attacking his sentence rather than an adverse pre-plea ruling. *See United States v. Almany*, 598 F.3d 238, 240-41 (6th Cir. 2010) (holding that the defendant's waiver of his right to challenge the applicable

mandatory minimum sentence was not knowing and voluntary); *United States v. Murdock*, 398 F.3d 491, 496-99 (6th Cir. 2005) (finding a Rule 11(b)(1)(N) violation where the defendant challenged the district court's calculation of monetary loss for sentencing purposes).

In sum, because Vasquez-Martinez pled guilty without the benefit of a plea agreement and without reserving the right to have us review the adverse ruling on his pretrial motion to suppress, his right to appeal that ruling is precluded by Rule 11(a)(2) of the Federal Rules of Criminal Procedure. We therefore have no need to reach the merits of Vasquez-Martinez's appeal.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.