2011 ND 232

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Veronica G R TREVINO, Defendant and Appellant.**

**No. 20100416.**

Supreme Court of North Dakota.

Dec. 13, 2011.

Jeremy Ensrud (argued), third-year law student, Mark Jason McCarthy (appeared), and Carmell Faye Mattison (on brief), Assistant State's Attorney, Grand Forks, N.D., for plaintiff and appellee.

David Neil Ogren, Grand Forks Public Defender Office, Grand Forks, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]   Veronica Trevino appeals from a criminal judgment entered after she conditionally pled guilty to reckless driving. Because we conclude the trial court erred in holding that reckless driving is a strict liability offense with no culpability requirement, we reverse the judgment and remand for further proceedings to allow Trevino to withdraw her guilty plea.

I

[¶ 2]   In July 2009, the State charged Trevino with reckless driving under N.D.C.C. § 39–08–03(1) alleging she drove a vehicle "recklessly in disregard of the rights or safety of others." The State alleged that in June 2009, Trevino drove to the Emerado police chief residence, where she confronted the police chief, and she left the residence at a high rate of speed, crashing into a residence across the road.

[¶ 3]   A trial was scheduled for October 2010. The State filed a motion in limine, seeking to prevent Trevino from introducing into evidence certain expert testimony regarding her mental health at the time of the alleged criminal violation. On October 18, 2010, Trevino filed a notice of expert witness, and the State objected to the late disclosure. On October 19, 2010, the State moved to amend the information, charging Trevino with reckless driving under either N.D.C.C. § 39–08–03(1) or (2). The State also argued reckless driving is a strict liability offense without a culpability requirement. Trevino filed a memorandum regarding the culpability for reckless driving, arguing that more than ordinary negligence was required to prove reckless driving. Trevino subsequently filed a request to withdraw her notice of expert witness, a response to the State's motion in limine, and a reply to the State's brief addressing the culpability for reckless driving. Trevino also submitted proposed jury instructions, including instructions defining "recklessly" and addressing the defense of lack of criminal responsibility.

[¶ 4]   In November 2010, the trial court held that reckless driving is a strict liability offense and that Trevino would therefore be precluded from raising the defense of lack of criminal responsibility under N.D.C.C. § 12.1–04.1–01. Trevino entered a conditional guilty plea to the charge of reckless driving.

II

[¶ 5]   Trevino argues the trial court erred in concluding that reckless driving is a strict liability offense and that no culpability requirement was necessary to con-

vict her. Trevino conditionally pled guilty to reckless driving and appealed from the criminal judgment. The criminal judgment, however, does not reflect that Trevino's guilty plea was conditional, nor is there a separate writing filed in the case specifying the issues reserved for appeal. *See* N.D.R.Crim.P. 11(a)(2) ("defendant may enter a conditional plea of guilty, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion"); *State v. Proell,* 2007 ND 17, ¶ 15, 726 N.W.2d 591 (considering conditional plea valid where record contained defendant's offer to conditionally plead guilty filed thirteen days after the criminal judgment was entered). We initially address whether Trevino has preserved the culpability issue for review.

### A

[¶ 6] To be valid, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Clark,* 2010 ND 106, ¶ 8, 783 N.W.2d 274; *State v. Blurton,* 2009 ND 144, ¶ 10, 770 N.W.2d 231. Rule 11, N.D.R.Crim.P., governs pleas and provides a procedural framework for entering pleas. Generally, a defendant who voluntarily pleads guilty "waives the right to challenge non-jurisdictional defects and may only attack the voluntary and intelligent character of the plea." *Blurton,* 2009 ND 144, ¶ 18, 770 N.W.2d 231; *see also* *McMorrow v. State,* 2003 ND 134, ¶ 5, 667 N.W.2d 577.

[¶ 7] Rule 11(a)(2), N.D.R.Crim. P., however, permits a defendant to enter a conditional guilty plea, reserving in writing the right to appeal an adverse determination of specified pretrial motions, including motions in limine. *See State v. Bjerklie,* 2006 ND 173, ¶ 4, 719 N.W.2d 359; *State v. Winkler,* 552 N.W.2d 347,

356 (N.D.1996). Rule 11(a)(2), N.D.R.Crim.P., provides:

> With the consent of the court and the prosecuting attorney, a defendant may enter a conditional plea of guilty, *reserving in writing* the right to have an appellate court review an *adverse determination* of a specified pretrial motion. A defendant who prevails on appeal must be allowed to withdraw the plea.

(Emphasis added.)

[¶ 8] Here, there is no separate writing reserving the defendant's right to appeal an adverse determination, but there is a transcript of the change of plea hearing. We have said that N.D.R.Crim.P. 11 does not require "ritualistic compliance"; however, a court must "substantially comply with the rule's procedural requirements" to ensure a defendant is entering a voluntary and intelligent guilty plea. *Blurton,* 2009 ND 144, ¶ 10, 770 N.W.2d 231; *Abdi v. State,* 2000 ND 64, ¶ 12, 608 N.W.2d 292; *State v. Hoffarth,* 456 N.W.2d 111, 113–14 (N.D.1990); *State v. Storbakken,* 246 N.W.2d 78, 83 n. 5 (N.D.1976); *see also* N.D.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded.").

[¶ 9] When our rule is derived from a federal rule, we may look to the federal courts' interpretation or construction of identical or similar language as persuasive authority for interpreting our rule. *State v. Runck,* 534 N.W.2d 829, 831 (N.D.1995); *State v. Jenkins,* 326 N.W.2d 67, 69–70 n. 4 (N.D.1982); *State v. Rueb,* 249 N.W.2d 506, 510 (N.D.1976); *see also* N.D.R.Crim.P. 2, explanatory note. If persuasive, the advisory committee's notes also may provide guidance. *Jenkins,* at 70 n. 4; *see also Weigel v. Weigel,* 1999 ND 55, ¶ 7, 591 N.W.2d 123. We consider whether the transcript of Trevino's plea hearing is sufficient to preserve her issue for review.

[¶ 10] North Dakota adopted its version of Rule 11(a)(2) in 1986, and it is similar to the federal rule. *See* N.D.R.Crim.P. 11(a)(2), explanatory note. In 1983, Rule 11(a)(2), F.R.Crim.P. was promulgated, in part, to "produce much needed uniformity in the federal system" on the permissibility of conditional pleas. *See* F.R.Crim.P. 11(a)(2), advisory committee notes; *United States v. Pierre,* 120 F.3d 1153, 1155 (11th Cir.1997). "The rule clarified that conditional pleas are recognized and proper in the federal system." *Pierre,* at 1155–56. One authority has described the purposes of the federal rule's writing requirement, stating:

> The writing requirement of Fed. R.Crim.P. 11(a)(2) insures that the plea is entered with the considered acquiescence of the government, prevents post-plea claims by the defendant that the plea should be deemed conditional merely because it occurred after denial of certain pretrial motions, and enables the court to verify that the issues reserved for appeal are material to the disposition of the case. Without a special writing setting forth the issues to be reserved, where the parties' statements regarding the plea are ambiguous, and in the face of the government's denial of any assent to the plea being conditional, a court may find insufficient government assention to a conditional plea and, therefore, invalidate that plea.

*Arraignment and Pleas,* 9 Fed. Proc., L.Ed., § 22:919 (2005) (citing *United States v. Yasak,* 884 F.2d 996 (7th Cir. 1989)).

[¶ 11] In *United States v. Garcia,* 339 F.3d 116, 118 (2d Cir.2003), the court of appeals acknowledged that circuit courts have split regarding whether the formal writing requirements of F.R.Crim.P. 11(a)(2) may be excused. *See Garcia,* at 118 (*comparing United States v. Herrera,* 265 F.3d 349, 352 (6th Cir.2001) ("The rule states plainly that a conditional guilty plea must be in a writing . . . . There is no such writing in this case. Therefore, [the defendant] has waived his right to appeal the district court's order denying the pre-plea suppression motion."), *with United States v. Bell,* 966 F.2d 914, 916–17 (5th Cir.1992) (excusing Rule 11(a)(2)'s writing requirement under Rule 11(h), on grounds that failure to comply did not affect substantial rights), and *Yasak,* 884 F.2d at 1000 (excusing lack of writing on grounds the plea transcript text, showing consent of the government and trial court, functioned as a sufficient writing)). In *Pierre,* 120 F.3d at 1155–56, the court of appeals also observed that the rule did not define government consent and that the circuits had further divided on the interpretation of this provision of the rule:

> Although this failure [to comply with the writing requirement] has been more readily excused as a formality that can be forgiven under the harmless error provision of the rule, *see, e.g., United States v. Yasak,* 884 F.2d 996 (7th Cir. 1989); *United States v. Fernandez,* 887 F.2d 564 (5th Cir.1989), the Advisory Committee Notes to the rule indicate that the writing requirement is intended to be enforced:
>
> > The requirement that the conditional plea be made by the defendant "reserving in writing the right to appeal from the adverse determination of any specified pretrial motion," though extending beyond the Second Circuit practice will ensure careful attention to any conditional plea. . . . By requiring this added step, it will be possible to avoid entry of a conditional plea without the considered acquiescence of the government. . . .

*Pierre,* 120 F.3d at 1155 n. 2.

[¶ 12] We need not, however, address further any circuit split here. Federal

courts have held the writing requirement of F.R.Crim.P. 11(a)(2) is not jurisdictional and upheld the validity of conditional guilty pleas absent a writing in certain circumstances. *See United States v. Markling*, 7 F.3d 1309, 1312–13 (7th Cir. 1993); *Yasak*, 884 F.2d at 999; *see also United States v. Elizalde–Adame*, 262 F.3d 637, 639 (7th Cir.2001). Specifically, federal courts have found a valid conditional guilty plea without a writing when:

(1) the government did not challenge the defendant's characterization of his plea as conditional or his right to bring a particular appeal; (2) something in the record (for example, the transcript of the plea hearing or correspondence between the government's and the defendant's attorneys) plainly showed that the government had agreed to a conditional plea and that the district court had accepted it; and (3) [the reviewing court] felt assured that [its] decision on the matter appealed would dispose of the case.

*Elizalde–Adame*, 262 F.3d at 639 (citing *Markling*, 7 F.3d at 1313; *Yasak*, 884 F.2d at 999–1000); *see also United States v. Vasquez–Martinez*, 616 F.3d 600, 604 (6th Cir.2010) (writing requirement excused only because a defendant " 'made it clear that he wished to preserve his right to appeal, the government acknowledged that he could appeal, and the court accepted that [reservation of appellate rights]' "); *United States v. Ormsby*, 252 F.3d 844, 848 n. 3 (6th Cir.2001) (failure of conditional plea to reserve right to appeal in writing may be excused when harmless; lack of writing excused when transcript was clear that defendant's plea was conditional, the government consented to the conditional plea, and the trial court approved the conditional plea); *Faubion v. State*, 233 P.3d 926, 929 (Wyo.2010) (record showed both parties and judge in nolo contendere proceeding fully aware of issue to be preserved for appeal); *see also* 9 Fed. Proc., L.Ed., § 22:919.

[¶ 13]   Here, the plea hearing transcript plainly provides that Trevino was entering a conditional guilty plea, reserving the right to appeal the trial court's prior "strict liability ruling":

THE COURT: Mr. Ogren.

MR. OGREN: Yes, Your Honor has a pretty good understanding through the motions and such that took place here, kind of the facts and circumstances that all surrounded that day. You know that's basically why it has taken so long to resolve this case is because everything that was involved.

What we are basically doing today by entering a plea, and I talked to the State's Attorney about it, we are doing what is called conditional plea. *We are looking to appeal the strict liability ruling that we had in the case to the supreme court.* And I will be making formalized motion to stay judgment following today's proceedings to do that.

Obviously the facts speak really for themselves. This is not something that would normally or ordinarily happen. Miss Trevino was very distraught that day, made some poor decisions and it resulted in what's happened.

This is what we, why it's taken so long to resolve this case. I think conditional plea is something that is a good idea in this case. We take a look at what the supreme court says and go from there.

THE COURT: All right. Was anyone injured in this?

MS. MATTISON: No, Your Honor. I believe the Defendant may have had some minor injuries.

THE COURT: Is it your understanding, Miss Mattison, this is going to be a conditional plea?

MISS MATTISON: Yes, Your Honor.

THE COURT: Anything further, Miss Mattison, that the State wants to add based upon statements by Miss Trevino or Mr. Ogren?

MISS MATTISON: No, Your Honor.

THE COURT: All right, and I didn't know it was going to be a conditional plea and I am not sure if there is certain language we have to add in the judgment. I didn't look it up ahead of time because I didn't know that's what it's going to be. Do you recall if there is any special language?

MISS MATTISON: I don't believe there is, Your Honor. Conditional plea means there is conditional plea of guilty. There is no plea agreements in the case and Defendant certainly has the right to appeal any criminal case within 30 days of judgment anyway.

THE COURT: All right. Is that your understanding also?

MR. OGREN: I believe so. I am trying to remember back, the DUI case we did earlier in the year and I don't think we had anything special in that case either as I recall.

THE COURT: All right. Then the Court, first of all, will accept the conditional plea of the defendant and the Court finds that it's made freely and voluntarily and a factual basis exists and so are the parties ready to proceed to sentencing today then?

MISS MATTISON: Yes, Your Honor.

MR. OGREN: We are.

(Emphasis added.)

[¶ 14] When the trial court queried whether the State understood that Trevino was entering a conditional guilty plea, the assistant state's attorney agreed, and the court accepted Trevino's conditional plea. Based on this transcript, both the State and the court consented to entry of the defendant's conditional guilty plea. Fur-

thermore, the State on appeal has neither argued that Trevino's guilty plea was not conditional nor that the State did not consent to the conditional plea. Although we hold the transcript in this case is sufficient to comply with N.D.R.Crim.P. 11(a)(2), we again reiterate that the best practice is to comply with the rule's specific writing requirements. *See Proell,* 2007 ND 17, ¶ 15, 726 N.W.2d 591.

**B**

[¶ 15] We next consider whether the trial court's "strict liability ruling" was an "adverse determination" under N.D.R.Crim.P. 11(a)(2). Here, the State filed a motion in limine to exclude Trevino from admitting certain expert testimony regarding her mental health. The State also filed a brief in opposition to any culpability requirement as an essential element of the offense. Trevino opposed the State's motion and argued in favor of a culpability requirement.

[¶ 16] In denying the State's motion, the trial court concluded that reckless driving under N.D.C.C. § 39–08–03 was a strict liability offense with no culpability requirement. Although the court held that a law enforcement officer would be permitted to testify at trial regarding Trevino's state of mind at the time of the arrest, the court further held that Trevino would be barred from raising the defense of lack of criminal responsibility under N.D.C.C. § 12.1–04.1–01. The court reasoned that because N.D.C.C. § 12.1–04.1–01 requires an essential element of the offense to be that the individual acted "willfully," and because the court held N.D.C.C. § 39–08–03 has no culpability requirement, Trevino could not assert the defense of lack of criminal responsibility.

[¶ 17] Similar to the present case, in *United States v. Ray,* 411 F.3d 900, 902–03 (8th Cir.2005), the court of appeals ad-

dressed whether a trial court's denial of the government's motion in limine was an adverse ruling on a pretrial motion within the meaning of F.R.Crim.P. 11(a)(2). In *Ray*, the government moved to bar the defendant from introducing evidence about his federal firearms license, arguing the parties agreed on the relevant facts and the facts did not support either an estoppel-by-entrapment defense or the defendant's proposed jury instruction on that defense. 411 F.3d at 902. The trial court denied the government's motion, holding the defendant could introduce some evidence about his federal firearms license, but the court also held that, if the government requested, the court would provide a limiting instruction to the jury that the defendant had no right to rely on the federal firearms license in possessing the firearms. *Id.* The court concluded the license did not justify submitting an estoppel-by-entrapment instruction to the jury. *Id.* The defendant thereafter entered a conditional guilty plea, reserving the right to appeal the court's decision that his proposed defense was untenable. *Id.*

[¶ 18] On appeal, the government argued, in essence, that the trial court's ruling was not an "adverse determination" under F.R.Crim.P. 11(a)(2), and it was impossible to meaningfully assess the impact of a potential jury instruction when there was no trial and no evidence considered by the jury. *Ray*, 411 F.3d at 903. The court of appeals, however, concluded that the judge's refusal to instruct a jury on a defense is equivalent to holding that a defense is untenable. *Id.* at 903. The court further explained that F.R.Crim.P. 11(a)(2) establishes that "issues decided in motions in limine are not inherently too speculative for appeal" and "many appellate courts have, pursuant to this rule, reviewed district courts' pretrial decisions on the availability of defenses." 411 F.3d at 903 (citing *United States v. Benning*,

248 F.3d 772, 775 (8th Cir.2001); *United States v. Santiago–Godinez*, 12 F.3d 722, 725 (7th Cir.1993)).

[¶ 19] Here, the trial court's order denying the State's motion in limine also held that Trevino would be precluded from raising the defense of lack of criminal responsibility under N.D.C.C. § 12.1–04.1–01. Although the court denied the motion, the effect of the court's decision was to completely bar Trevino's claimed defense at trial. The State has not argued on appeal that Trevino has either failed to raise or properly preserve a defense based on lack of criminal responsibility. *Cf. State v. Byzewski*, 2010 ND 30, ¶ 5, 778 N.W.2d 551 (addressing merits of defendant's constitutional challenge when the State had not raised a timeliness issue concerning the defendant's ability to challenge protection order). We therefore conclude that the trial court's order constitutes an "adverse determination" under N.D.R.Crim.P. 11(a)(2), and we address the merits of Trevino's argument.

### III

[¶ 20] Trevino argues the trial court erred in concluding that reckless driving under N.D.C.C. § 39–08–03 is a strict liability offense with no culpability requirement. Trevino's argument presents a legal issue regarding the proper interpretation of N.D.C.C. § 39–08–03.

[¶ 21] Our standard of review for interpreting a criminal statute is well-established:

"Construction of a criminal statute is a question of law, fully reviewable by this Court. Our primary goal in interpreting statutes is to ascertain the Legislature's intentions. In ascertaining legislative intent, we first look to the statutory language and give the language its plain, ordinary and commonly

understood meaning. We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. When a statute's language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature's intent. We construe ambiguous criminal statutes against the government and in favor of the defendant."

*State v. Buchholz,* 2005 ND 30, ¶ 6, 692 N.W.2d 105 (quoting *State v. Laib,* 2002 ND 95, ¶ 13, 644 N.W.2d 878 (citations omitted)). Under N.D.C.C. § 1–01–09, "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears." Additionally, "[t]echnical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition." N.D.C.C. § 1–02–03.

[¶ 22] In the amended pleadings, the State charged Trevino with reckless driving under either N.D.C.C. § 39–08–03(1) or (2), which provides:

Any person is guilty of reckless driving if the person drives a vehicle:

1. *Recklessly* in disregard of the rights or safety of others; or
2. *Without due caution and circumspection* and at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another.

Except as otherwise herein provided, any person violating the provisions of this section is guilty of a class B misdemeanor. Any person who, by reason of reckless driving as herein defined, causes and inflicts injury upon the person of another, is guilty of aggravated reckless driving, and is guilty of a class A misdemeanor.

(Emphasis added.)

[¶ 23] North Dakota's reckless driving statute was initially adopted in 1927 as part of the Uniform Motor Vehicle Act Regulating the Operation of Vehicles. *See* 1927 N.D. Sess. Laws ch. 162, §§ 3, 63. This statute stated in relevant part: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving...." *Id.* at § 3. A historical note to the uniform provision indicates this section was "intended to proscribe any wilful or wanton driving that endangered life, limb or property, even though its wording appears to allow an alternative interpretation encompassing a second offense based on lesser degrees of driving misconduct." U.V.C.A. § 11–901(a) (1967) (citing "Notes to Uniform Act Regulating the Operation of Vehicles on Highways," UVC Act IV, at page 104 (1926)).

[¶ 24] The reckless driving statute was subsequently codified into three elements at N.D.R.C. § 39–0803 (1943), providing in part:

Any person shall be guilty of reckless driving if he drives a vehicle upon a highway:

1. Carelessly and heedlessly in willful or wanton disregard of the rights or safety of others;

2. Without due caution and circumspection; or

3. At a speed or in a manner to endanger or likely to endanger any person or property of another.

However, as we explained in *State v. Tjaden*, 69 N.W.2d 272, 281 (N.D.1955), "[u]nder the original law a driver commits reckless driving either by driving 'carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others,' or by driving 'without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property.' " "Driving only 'without due caution and circumspection' was not intended to set out a separate way of committing reckless driving." *Id.*

[¶ 25] After this Court's decision in *Tjaden*, the legislature revised N.D.R.C. § 39–0803, to provide in part:

Any person shall be guilty of reckless driving if he drives a vehicle upon a highway:

1. Carelessly and heedlessly in willful or wanton disregard of the rights or safety of others; or

2. Without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another.

1959 N.D. Sess. Laws ch. 289, § 10. We said in *State v. Kreiger*, 138 N.W.2d 597, 600 (N.D.1965), that to sustain a conviction for reckless driving, the State must prove the elements under either of the subsections, i.e., that the defendant's conduct constituted reckless driving under either subsection (1) or (2).

[¶ 26] In 1975, the legislature again revised the reckless driving section into its present form. *See* 1975 N.D. Sess. Laws ch. 349, § 5. Notably, the legislature replaced the phrase "[c]arelessly and heed-

lessly in willful or wanton disregard of the rights or safety of others," with "[r]recklessly in disregard of the rights or safety of others." *Id.* at § 5. The 1975 revision did not define the word "recklessly."

[¶ 27] Section 12.1–02–02(1)(c), N.D.C.C., provides a definition of "recklessly" for purposes of Title 12.1:

For the purpose of this title, *a person engages in conduct:*

. . . .

c. "Recklessly" if he engages in the conduct *in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks,* such disregard involving a *gross deviation from acceptable standards of conduct,* except that, as provided in section 12.1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication.

(Emphasis added.) The legislature enacted this statutory definition in 1973 as a part of the comprehensive revision of the criminal code. *See* 1973 N.D. Sess. Laws ch. 116, § 2. As previously discussed, just two years later in 1975, the legislature amended N.D.C.C. § 39–08–03(1), to replace the phrase "[c]arelessly and heedlessly in willful or wanton disregard" with simply "[r]recklessly in disregard."

[¶ 28] Generally, statutes have defined reckless driving "as the operation of an automobile under such circumstances as to show a reckless disregard of the consequences, or conscious and intentional driving which the driver knows or should know creates an unreasonable risk of harm to others." 16 *Blashfield Automobile Law and Practice* § 490.67, at 151–53 (4th ed. 2003) (footnotes omitted). "Other statutes include the elements of willfulness and wantonness." *Id.* at 153–54; *see also* Ed-

ward C. Fisher, *Vehicle Traffic Law* 323–67 (1961).

> "Wilful," as used in criminal statutes, implies a purpose or willingness to commit an act, and although it does not require an evil intent, it implies the person knows what he is doing, intends to do what he is doing, and is a free agent. It means a voluntary act or course of conduct proceeding from the conscious motion of the will; obstinate; perverse. "Wanton" means reckless disregard for consequences likely to result.

Fisher, *supra* at 325–26 (footnote omitted). In *State v. Sullivan*, 227 N.W. 230, 231–32, 58 N.D. 732, 736–37 (1929), this Court said that the words "reckless" and "heedless" have been held to be "practically synonymous" and that "[t]his includes the element of disregard of the rights of others, for when one proceeds heedlessly he is *not thinking of or considering the rights of other drivers.*" (Emphasis added.)

[¶ 29] Although our legislature did not define the term "recklessly" in N.D.C.C. § 39–08–03, we presume the legislature was aware of the significant criminal code revision undertaken two years earlier, which provided specific definitions for several terms. While N.D.C.C. § 12.1–02–02 may be directly applicable to the offenses in N.D.C.C. tit. 12.1, when appropriate, this Court has also looked to Title 12.1 to affirmatively define words found in statutory sections outside of Title 12.1. *See, e.g., State v. Skarsgard*, 2007 ND 159, ¶ 7, 740 N.W.2d 64 (applying definition of "offense" in N.D.C.C. § 12.1–01–04(20) to N.D.C.C. §§ 39–08–01 and 39–06–42); *State v. Benson*, 376 N.W.2d 36, 41 (N.D. 1985) (stating N.D.C.C. § 12.1–02–02 was an "appropriate source" to define "intent" outside of Title 12.1); *Snortland v. Crawford*, 306 N.W.2d 614, 622 (N.D.1981) (applying Title 12.1 to other code sections

when the sections are penal in nature); *see also* N.D.C.C. §§ 1–01–09, 1–02–03.

[¶ 30] Here, in its order denying the State's motion in limine, the trial court concluded that N.D.C.C. § 39–08–03, does not include a culpability requirement. The court stated that "the statute merely describes the manner of driving which constitutes the offense—recklessly or without due caution and circumspection." The court concluded the statute provided "a strict liability offense punishable without regard to intent, knowledge, willfulness, or negligence." The court also declined to apply N.D.C.C. § 12.1–02–02(2), stating this section only applies to offenses or crimes in Title 12.1 and any reliance on the statute would be misplaced based on our decision in *State v. Olson*, 356 N.W.2d 110 (N.D.1984).

[¶ 31] In *Olson*, 356 N.W.2d at 112, this Court held that N.D.C.C. § 39–08–07, which governs a driver's duty to stop upon colliding with an unattended vehicle, is a strict-liability offense because the section contains no culpability requirement. This Court also declined to apply N.D.C.C. § 12.1–02–02(2), providing for a culpability of "willfully" when "a statute defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability," because this culpability requirement applies only to offenses or crimes described in Title 12.1, and did not apply to N.D.C.C. § 39–08–07. *Olson*, at 112. In this case, however, we are applying a definition from N.D.C.C. § 12.1–02–02(1) to affirmatively define a culpability term which is present in N.D.C.C. § 39–08–03, rather than implying a culpability where none is provided. We therefore conclude the trial court's reliance on *Olson* is misplaced.

[¶ 32] The State argues that reckless driving is a strict liability offense, because "reckless" in the statute refers to driving

as the actus reus, not the mens rea. The State asserts the defendant's "state of mind" is irrelevant, and the only inquiry is whether the manner of driving was either reckless or without due caution or circumspection. Generally, however, the term "actus reus" is defined as: "The wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability." *Black's Law Dictionary* 41 (9th ed. 2009) (emphasis in original). "Mens rea" means "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime; criminal intent or recklessness." *Id.* at 1075. While these definitions are instructive, we believe N.D.C.C. § 39–08–03 itself provides the requisite criminal intent a defendant must have to violate the statute.

[¶ 33] For purposes of N.D.C.C. § 39–08–03, the relevant "conduct" would be "driving." Section 39–08–03(1), N.D.C.C., provides that a person is guilty of "reckless driving" if the person "drives" a vehicle "[r]ecklessly in disregard of the rights or safety of others." Section 12.1–02–02(1), N.D.C.C., defines various levels of culpability and is introduced by the phrase, "a person engages in conduct." While "driving" is the conduct and driving a vehicle "in disregard of the rights or safety of others" may be the wrongful conduct under N.D.C.C. § 39–08–03(1), the wrongful conduct must still be done by the person "recklessly." We conclude that N.D.C.C. § 39–08–03(1) requires the State prove the defendant drove "recklessly" and incorporates the definition of "recklessly" from N.D.C.C. § 12.1–02–02(1)(c) as an element of the offense.

[¶ 34] Likewise, under N.D.C.C. § 39–08–03(2), the relevant conduct is again "driving" a vehicle and the wrongful conduct is driving "at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another." However, the wrongful conduct must still be done by the person "without due caution and circumspection" to be reckless driving under the statute. We also recognize that the phrase "without due caution and circumspection" has not been further defined by our legislature.

[¶ 35] In *Tjaden*, 69 N.W.2d at 280, this Court generally explained that "[t]he use of that phrase [without due caution and circumspection] in the criminal statute has been construed in a number of cases and it has been generally held that in order to constitute a crime something more than what is expressed in that phrase as ordinarily understood must be stated." The Court continued:

It is generally held that there must be a higher degree of negligence than is required to establish negligent default in a civil action. It must include some element showing a reckless disregard for the safety of others. The term generally used is "criminal negligence" which cannot be implied from the use of the phrase "without due caution and circumspection" alone.

*Id.* (citations omitted). We decline, however, to further define the phrase here because it is not apparent the issue would be dispositive on remand and because the issue has not been thoroughly briefed and presented on appeal.

[¶ 36] For the forgoing reasons, we hold the trial court erred in concluding that reckless driving under N.D.C.C. § 39–08–03 is a strict liability offense and in precluding Trevino's defense of lack of criminal responsibility. Our decision should not be construed, however, as holding that Trevino's defense may not be precluded on other grounds.

## IV

[¶ 37] We reverse the judgment, and we remand to allow Trevino to withdraw her guilty plea and for further proceedings consistent with this opinion.

[¶ 38] DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 39] Although I have serious misgivings about the result of the majority opinion, I nevertheless concur in that result.

[¶ 40] The crime of reckless driving is found in N.D.C.C. tit. 39. The lack of criminal responsibility statutes are found in N.D.C.C. tit. 12.1. In *City of Dickinson v. Mueller*, 261 N.W.2d 787, 789 (N.D. 1977), this Court held that N.D.C.C. § 12.1–02–02(2), providing that if there is no culpability prescribed in a statute, the culpability that is required is willfully, "applies only to the offenses or crimes described in Title 12.1, N.D.C.C., and therefore does not apply to Section 5–02–06, N.D.C.C." In *State v. North Dakota Education Association*, 262 N.W.2d 731, 733–34 (N.D.1978), this Court held that N.D.C.C. § 12.1–02–02 did not apply to a crime under ch. 16–20, the Corrupt Practices Act. *See* N.D.C.C. § 12.1–02–02 ("For the purposes of this title . . . ."). Nevertheless, in *Snortland v. Crawford*, 306 N.W.2d 614, 622 (N.D.1981), the Court concluded that the term "knowingly" as defined in N.D.C.C. § 12.1–02–02(1)(b) should apply to that term as it was used in N.D.C.C. § 16–20–17.3. Under our precedent, I cannot disagree with the majority's use of the definition of the term "recklessly" as used in N.D.C.C. § 12.1–02–02(1) to define that term as it is used in N.D.C.C. § 39–08–03. I also agree that *State v. Olson*, 356 N.W.2d 110 (N.D.1984), is distinguishable in that, like *State v. North Dakota Education Association*, the statute at issue in *Olson* contained no term of culpability.

[¶ 41] While I believe our statutes and our prior decisions lead to the result reached by the majority opinion, I am not entirely convinced that is what our Legislature intended. It is as rational to construe the term "recklessly" as used in N.D.C.C. § 39–08–03 to define the nature of the driving as it is to construe the term to refer to the culpability of the driver. Nevertheless, I agree with the majority that if a criminal statute is ambiguous, we construe it in favor of the defendant.

[¶ 42] Finally, I note this issue arose in the trial court with regard to whether or not the defendant would be permitted to introduce evidence of her mental health to show a lack of criminal responsibility. The lack of criminal responsibility is not an affirmative defense; rather, once evidence of lack of criminal responsibility is introduced into a trial, it becomes the burden of the State to affirmatively prove the defendant had the requisite intent to commit the crime. *State v. Johnson*, 2001 ND 184, 636 N.W.2d 391. Thus, under N.D.C.C. § 12.1–04.1–01(1), whenever evidence of any mental disease or defect is introduced in a case charging reckless driving, it will be the burden of the State to prove there was no mental disease or defect.

[¶ 43] In light of the number of drivers on the streets and highways, the charge of reckless driving is a somewhat ubiquitous offense carrying a penalty of a class B misdemeanor. In order to convict for that offense the State may now be required to engage expert witnesses to prove the defendant had the requisite intent to drive recklessly. But, notwithstanding the mental state of the defendant, a person who drives in a foolhardy manner is a menace to the many other people using the streets

and highways. Under N.D.C.C. § 39–06.1–10, a conviction of reckless driving in violation of § 39–08–03 results in the assignment of eight points against the license of the defendant. The accumulation of twelve points results in the suspension of the defendant's license to drive. I assume the provisions of N.D.C.C. tit. 39 are intended to make the streets and highways safe and to keep dangerous drivers off the road. I doubt our decision today furthers that purpose.

[¶ 44] GERALD W. VANDE WALLE, C.J.

SANDSTROM, Justice, concurring specially.

[¶ 45] The majority opens the offense of reckless driving to the N.D.C.C. § 12.1–04.1–01 defense of lack of criminal responsibility because of a "mental disease or defect."

[¶ 46] A person avoiding a reckless driving conviction on this basis may be subject to summary suspension of driving privileges without prior notice, and to subsequent revocation, under N.D.C.C. § 39–06–34:

In addition to other powers set forth in this chapter, the director, having good cause to believe that a licensed operator is incompetent or otherwise not qualified to be licensed, may upon written notice of at least five days to the licensee require the licensee to submit to such physical, mental, or driver's examination as may be deemed necessary. *If the director has good cause to believe that the licensed operator presents an immediate danger to the motoring public, the director may immediately, and without prior notice, suspend the operator's license* pending the examination.... Upon the conclusion of such examination, *the director shall take action as may be appropriate and may suspend or revoke the license of such person* or permit the licensee to retain the license, or may issue a license subject to restrictions as permitted under section 39–06–17. Refusal or neglect of the licensee to submit to such examination shall be grounds for suspension or revocation of the license.

(Emphasis added.)

[¶ 47] The person's license might also be subject to suspension under N.D.C.C. § 39–06–32(2):

The director may suspend the license of an operator, after hearing, upon proof by a fair preponderance of the evidence, that any of the following apply to the licensee:

. . . .

2. Incompetence to drive a motor vehicle.

. . . .

[¶ 48] In addition, under N.D.C.C. § 39–06–03, a person with such a mental disability or disease may be ineligible to have a driver's license:

The director may not issue any license hereunder:

. . . .

4. To any person who has previously been adjudged to be afflicted with or suffering from any mental disability or disease and who has not at the time of application been restored to competency by the methods provided by law.

. . . .

7. To any person when the director has good cause to believe that such person by reason of physical or mental disability would not be able to operate a motor vehicle with safety upon the highways.

And, if a driver's license has been issued, it may be subject to cancellation under N.D.C.C. § 39–06–24:

> The director shall cancel any operator's license ... upon determining that the person is not entitled to the issuance of the document under the laws of this state....

[¶ 49]   DALE V. SANDSTROM