# United States Court of Appeals
## For the First Circuit

No. 08-1011

UNITED STATES OF AMERICA,

Appellee,

v.

TENNYSON MARCEAU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Torruella, Baldock and Howard,
Circuit Judges.

Virginia G. Villa, Assistant Federal Defender, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Paula D. Silsby, United States Attorney, was on brief, for
appellee.

January 26, 2009

**HOWARD, Circuit Judge.** Appellant Tennyson Marceau pled guilty to stealing guns from a Maine firearms dealer. The district court imposed the statutory maximum prison sentence of ten years. On appeal, Marceau claims that his sentence is unreasonable, especially when compared to the eighteen-month sentence imposed on his partner in the crime. He also argues that the district court made certain Guideline-related errors and that two of the Guideline provisions applied to him were improperly enacted. We affirm.

## I.   BACKGROUND[1]

In the early morning hours of April 23, 2007, police officers in Brewer, Maine responded to an alarm at Maine Military Supply ("MMS"), a firearms dealer. The responding officers found several signs of a break-in and theft of firearms. A video surveillance system captured the images of two men, one of whom threw a projectile through the premises' glass door. Both men were recorded as they placed several handguns and AK-47 assault rifles into a duffel bag before leaving the scene in a white Jeep. The store's owner reported that fifteen guns were stolen -- eight rifles and seven pistols. Several of the stolen firearms were semi-automatic and capable of accepting large capacity magazines.

---

[1]We take the facts from the Prosecution Version of Events -- to which Marceau admitted during his plea colloquy -- and the Revised Presentence Investigation Report ("PSR"), the facts of which were not challenged.

Investigation led police to the owner of the Jeep, Sayer Tamiso, and eventually to Tamiso's girlfriend, who told police that she overheard Tamiso and Marceau make plans to commit the robbery. Part of the plan was that Marceau would bring the stolen guns to his home in Vermont, remove their serial numbers, and eventually sell them. She also said that she confronted Tamiso after seeing a television news account of the robbery, and that he admitted the two men's involvement. Other witnesses and physical evidence also connected Tamiso and Marceau to each other and to the crime.

A subsequent search of Marceau's Vermont home yielded gun tags corresponding to items stolen from MMS.[2] After learning that Marceau occasionally stayed at his grandmother's home, police also conducted a search there and recovered several rifles from the Maine robbery. In addition, two stolen guns were recovered from a friend of Marceau's. Authorities determined that of the fifteen guns stolen, Marceau brought thirteen to Vermont, nine of which were recovered. Marceau said he gave the other four to an individual he would not identify. Tamiso told authorities he kept two of the stolen guns, but later threw them into a river. Although Tamiso provided a location for his disposal, the two guns were never recovered. Finally, Vermont authorities recovered a gun

---

[2]Vermont law enforcement officers were familiar with Marceau because he had been arrested for possession with intent to distribute marijuana about a week after the MMS robbery.

with an obliterated serial number from a man who said he bought it from Marceau. This gun was not connected to the MMS robbery.

Marceau was arrested in May 2007. He pled guilty the following month to a one-count information charging him with theft of firearms, in violation of 18 U.S.C. § 922(u).

In the PSR, the Probation Department first recounted the facts of the burglary and then turned to the Guidelines calculation. Citing U.S.S.G. § 2K2.1(a)(4)(B), the PSR determined Marceau's base offense level ("BOL") to be twenty -- as opposed to the default level of twelve, U.S.S.G. § 2K.1(a)(7) -- because the theft involved semi-automatic firearms capable of accepting large capacity magazines and because Marceau was a "prohibited person" at the time of the crime by virtue of his ongoing drug use, see 18 U.S.C. § 922(g). Four levels were added due to the number of firearms stolen. U.S.S.G. § 2K2.1(b)(1)(B). An additional four levels were added pursuant to U.S.S.G. § 2K2.1(b)(6)[3] because Marceau was carrying a weapon at the time of the MMS robbery -- a twenty-five caliber pistol. Yet another four levels were added because Marceau was trafficking the stolen firearms, id. § 2K2.1(b)(5), and four more levels were added as a result of his possession of a firearm with an obliterated serial number, U.S.S.G.

---

[3]Section 2K2.1(b)(6) applies to defendants who use or possess "any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used in connection with another felony offense."

-4-

§ 2K2.1(b)(4)(B). From this total adjusted offense level of thirty-six, a three-level downward adjustment for acceptance of responsibility was applied, for a total offense level of thirty-three.

When combined with a criminal history category of II,[4] Marceau's recommended Guideline range was 151 to 181 months. The applicable statutory maximum, however, was 120 months. The district court adopted the findings of the Probation Officer and sentenced Marceau to 120 months' imprisonment. Approximately one month later, the same district court judge sentenced Tamiso to 18 months' imprisonment.

## II. ANALYSIS

Marceau's appeal takes aim at various specific components of his offense level calculation, and also at the overall reasonableness of his sentence. We discuss each contention in turn. We review de novo the district court's reading of Guideline provisions. United States v. Stoupis, 530 F.3d 82, 84 (1st Cir. 2008). Factual findings are reviewed for clear error. Id.

---

[4]Marceau's criminal record included Vermont convictions for simple assault in 2006 and illegal alcohol consumption, providing false information to a police officer and violating conditions of release in 2007. Each conviction was worth one criminal history point.

## A. Offense level increase for semi-automatic firearms

### 1. Semi-automatic weapon ban

Marceau first argues that the eight-level offense level increase (from twelve to twenty) for theft of semi-automatic weapons should not have been applied because Congress allowed the statutory proscription against possessing such weapons to expire in 2004. Thus, Marceau argues, the Sentencing Commission exceeded its authority in April 2006 when it voted to retain the enhancement. We disagree. Before detailing our reasoning, we sketch the relevant background.

The Violent Crime Control and Enforcement Act of 1994[5] made possession of various semi-automatic firearms illegal, but contained a sunset provision under which the ban expired September 13, 2004, ten years after its implementation. See 18 U.S.C. § 922(v)(declaring weapons unlawful)(repealed 2004); 21 U.S.C. § 921(a)(30) (defining semiautomatic assault weapon)(repealed 2004); see also 26 U.S.C. § 5845 (defining firearm). Responding to directives within the 1994 Act, the Sentencing Commission adopted Amendment 522, which amended U.S.S.G. § 2K2.1 to enhance base offense levels for possession of statutorily-defined semi-automatic assault weapons, without regard to their use in another offense. Also enacted was Amendment 531, which prescribed an upward

---

[5]Pub. L. No. 103-322, §§ 110102, 110105, 108 Stat. 1796, 1996-98, 2000.

departure for semi-automatic firearms with a capacity exceeding ten cartridges possessed in connection with a crime of violence or controlled substance offense. Both amendments became effective November 1, 1995.

Courts responded to the expiration of the weapons ban in different ways. Some questioned whether the expired ban could continue to support sentence enhancements, see, e.g., United States v. Serna, 435 F.3d 1046 (9th Cir. 2006) (questioning whether possession of an assault weapon was a "crime of violence" for Guidelines purposes), while others applied the enhancement without regard to the present legality of the weapon, see, e.g., United States v. Ray, 411 F.3d 900 (8th Cir. 2005); United States v. Vega, 392 F.3d 1281 (11th Cir. 2004).

In response to what it described as "inconsistent application" of the enhanced base offense level following the expiration of the weapons ban, the Commission subsequently adopted Amendment 691, which deleted the explicit statutory reference to the now-expired weapons ban, and instead applied the enhanced offense level in §2K2.1(a)(4)(B) to "a semiautomatic weapon capable of accepting a large capacity magazine." Amendment 691 took effect November 1, 2006, and was in effect at the time of Marceau's sentencing. Marceau argues that enactment of Amendment 691 after the expiration of the assault weapon ban violated the Commission's

obligation to promulgate Guidelines "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a)(1).

While it is true that Congress has granted the Commission broad discretion with respect to Guideline formulation, the Commission must nevertheless "bow to the specific directives of Congress." United States v. LaBonte, 520 U.S. 751, 757 (1997); Mistretta v. United States, 488 U.S. 361, 377 (1989). Thus, if Amendment 691 "is at odds with [a statute's] plain language, it must give way." LaBonte, 520 U.S. at 757. In this case, however, we agree with the district court that the enhanced BOL in Amendment 691 is not at odds with any statute because it does not penalize the mere possession of legal firearms, but only possession by certain "prohibited persons."

The district court approvingly cited Ray, in which the Eighth Circuit affirmed the district court's application of the section 2K2.1(a)(4)(B) enhancement to a defendant who possessed a semi-automatic weapon which remained legal due to a "grandfather" clause in the 1994 Act. Rejecting the argument that the enhancement could only be applied to illegal weapons, the Ray court concluded that "[t]hrough § 2K2.1(a)(4)(B), the sentencing commission decided to punish more severely the possession of semiautomatic firearms, even those of the pre-ban variety," by those who have lost the right to possess firearms. Id. at 906;

see also U.S.S.G. § 2K2.1 cmt. n.2 (2007); 18 U.S.C. §§ 922(g), (n).

We took a similar approach in United States v. Laureano-Velez, 424 F.3d 38 (1st Cir. 2005). There, we rejected the defendant's argument that possession of a "grandfathered," pre-ban weapon could not form the basis of a conviction under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug offense. Instead, following the course laid by Ray, we concluded that the grandfather clause created an exception "only with respect to the separate crime of simple possession of such weapons under § 922(v)(2)." Id. at 41 (citing Ray, 411 F.3d at 905-06; Vega, 392 F.3d at 1282-83). We follow a similar course here. We find no conflict between the lapse of the statutory assault-weapon ban and the imposition of a higher offense level for use of such a weapon by anyone in a class of "prohibited persons."[6]

### 2. Prohibited person

Alternatively, Marceau argues that he is not a "prohibited person" within the meaning of U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I). The Guidelines define "prohibited person" as any person described in 18 U.S.C. § 922(g) or 922(n). U.S.S.G. § 2K2.1 cmt. n.3 (2007). The district court found that Marceau fit

---

[6]We note that Congress has enacted several laws criminalizing the possession of otherwise legal weapons, depending on the status of the individual defendant. See, e.g., 18 U.S.C. § 922(g)(1-9) (listing various groups of individuals for whom possession of any firearm is illegal).

-9-

within § 922(g)(3), which bars firearm possession by a person "who is an unlawful user of . . . any controlled substance."  We agree.

In order to avoid unconstitutional vagueness, courts have held that the critical term "unlawful user" requires a "temporal nexus between the gun possession and regular drug use."  United States v. Edwards, 540 F.3d 1156, 1162 (10th Cir. 2008), cert. denied, ___ U.S. ___, 2009 WL 56607 (Jan. 12, 2009).  Refined further, an "unlawful user" is one who engages in "regular use over a long period of time proximate to or contemporaneous with the possession of the firearm."  United States v. McCowan, 469 F.3d 386, 392 n.4 (5th Cir. 2006).

The district court was presented with ample evidence to support its finding that Marceau was a "prohibited person."  For example, the PSR noted that Marceau explained that even after his stay at a drug treatment facility, he was unable to remain drug-free, and that the MMS robbery was the first step in a plan to sell the stolen firearms to get money for drugs.  In addition, an FBI agent testified that Tamiso told him that Marceau had smoked marijuana daily in the days before the robbery, stopping only when he exhausted his supply.  Finally, the record shows that Vermont officials recognized Marceau's name from two marijuana-related arrests -- one before and one after the instant robbery.

Marceau makes three arguments in response to this record evidence.  First, he states that the record did not establish

regular drug use after he completed the treatment program. The record includes, however, his admissions that he was unable to remain drug-free after his treatment and that he stole the weapons to raise money to buy drugs.

Next, Marceau argues that the two arrests -- the first for illegal alcohol consumption during which he was found in possession of marijuana, and the other for possession of marijuana and scales -- should be discounted because neither instance resulted in a probation revocation or positive urinalysis. At most, he claims, this evidence creates an inference of possession, and not use. The district court was free to rely upon Marceau's marijuana possession, in combination with the other evidence, to draw an inference of use. See e.g., United States v. Mack, 343 F.3d 929, 933-34 (8th Cir. 2003) (evidence of defendant's possession of small, "user quantity" of marijuana, where arresting officer smelled marijuana and where defendant had previously been in a dispute over marijuana, is sufficient to support conviction for unlawful use).

Finally, the district court was not required to reject the FBI agent's testimony as hearsay, as urged by Marceau, because the Rules of Evidence do not apply to sentencing hearings; a district court may consider any relevant evidence so long as the evidence "'has sufficient indicia of reliability to support its probable accuracy.'" United States v. Green, 426 F.3d 64, 66 (1st

Cir. 2005)(quoting U.S.S.G. § 6A1.3(a)). Whether any particular evidence is sufficiently reliable is within the broad discretion of the district court. Id. We detect no abuse of that discretion here.

Based on the foregoing, we affirm the district court's finding that Marceau was a "prohibited person" within the meaning of U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I), and therefore the eight-level enhancement under section 2K2.1(4) was properly applied to him.

## B. Enhancement for firearms trafficking

Marceau next argues that the district court incorrectly applied the four-level enhancement for firearms trafficking, pursuant to U.S.S.G. § 2K2.1(b)(5). We find no error.

As relevant here, the enhancement applies if Marceau

> "transported, transferred, or otherwise disposed of two or more firearms to another individual . . . and . . . knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful; or who intended to use or dispose of the firearm unlawfully."

U.S.S.G. § 2K2.1 cmt. n.13 (2007).

The PSR notes that Marceau admitted giving four of the stolen firearms that he took to Vermont to an individual he would not identify. This easily satisfies the "transport, transfer, or disposal" prong of the Guideline. Thus, it is not surprising that Marceau targets only the second part of the enhancement, arguing that there was no evidence that the individuals to whom he

-12-

transferred the stolen guns were themselves "prohibited persons," or that Marceau knew or had reason to believe they intended to use the guns unlawfully.

The district court acknowledged the lack of direct evidence of Marceau's knowledge of the recipients' intent. Instead, the court focused on Marceau's numerous, uncontested pre-robbery statements evincing an intent to steal the firearms, bring them to Vermont, remove the serial numbers and exchange the guns for money to buy drugs. The district court also noted that Marceau's known actions all precisely tracked his stated intent, and found that Marceau probably obliterated the serial numbers from the guns that he transferred to the individual he would not name. From there, the court took into consideration our observation in United States v. Ortiz, 64 F.3d 18, 22 (1st Cir. 1995), that "the serial number is obliterated from a gun so that it cannot be traced by law enforcement. The act is thus done in anticipation that the gun will be used in criminal activity," and concluded that Marceau trafficked the weapons within the Guideline's meaning.

The government need only prove by a preponderance of the evidence that Marceau is subject to the trafficking enhancement. United States v. Cruz-Rodriguez, 541 F.3d 19, 31 n.8 (1st Cir. 2008). Moreover, the government is not required to prove that Marceau had specific knowledge of any specific felonious plans on the part of the stolen weapons' recipients. United States v.

-13-

Molloy, 324 F.3d 35, 39 (1st Cir. 2003). A sentencing court is entitled to rely on circumstantial evidence, United States v. Sepulveda, 15 F.3d 1161, 1202 (1st Cir. 1993), and draw plausible inferences therefrom, United States v. Ofray-Campos, 534 F.3d 1, 39 (1st Cir.), cert. denied, ___ U.S. ___, 129 S. Ct. 588 (2008). Such evidence may include Marceau's pre- and post-robbery statements. Molloy, 324 F.3d at 41. While Marceau tries to disclaim his statements of intent as "mere braggadocio," the fact that he actually followed through on the specific theft, spirited the stolen weapons to Vermont and transferred four of them provides ample reason to reject his version.

Here, given the combination of Marceau's pre-robbery statements and his post-robbery actions, there was no error in the district court's application of the trafficking enhancement.

## C. Enhancement for weapon with obliterated serial number

Marceau's challenge to the four-level enhancement for possessing a firearm with an obliterated serial number is limited to his claim that the Sentencing Commission acted beyond its authority when it increased the enhancement from two to four levels via adoption of Amendment 691. Unlike his argument with respect to the expired weapons ban: that there was no authority for a sentence enhancement for conduct no longer illegal, here Marceau claims that the Amendment was adopted in violation of procedures controlling the Commission's rule-making authority. We disagree.

-14-

We review the legality of a Guidelines provision de novo. United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007). Marceau bases his argument on a portion of the Commission's enabling legislation, which provides that "[t]he Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). Marceau claims that the adoption of the amendment was arbitrary because the Commission's original published reason for the amendment was "the difficulty in tracing firearms with altered or obliterated serial numbers," yet the adopted amendment's reasoning also mentions "an increase in the market" for such weapons. Marceau argues that the final reliance on two reasons, rather than on only the original reason, renders the enhancement illegal. He provides no legal support for this assertion, however. The proposed Guideline amendment was published; comments were received from, among others, prosecutors and defenders; Congress interposed no objection. We find no violation of section 994(o).

## D.  Reasonableness

Marceau's final argument is that the disparity between his ten-year sentence and Tamiso's eighteen-month sentence makes his sentence unreasonable.  Our analysis ordinarily involves an examination of both the procedural aspects of sentencing and the substance of the sentence. United States v. Politano, 522 F.3d 69,

-15-

72 (1st Cir.), cert. denied, ___ U.S. ___, 129 S. Ct. 133 (2008) (citing Gall v. United States, ___ U.S. ___, ___, 128 S. Ct. 586, 597 (2007)).  Our first task is to determine whether the district court made any procedural errors "'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'"  Id. (quoting Gall, 128 S. Ct. at 597) (alteration in original).

Where, as we have found here, the district court has committed no such procedural error,[7] we then review the "substantive reasonableness of the sentence imposed and review the sentence for abuse of discretion."  Id. (citing United States v. Martin, 520 F.3d 87, 92-93 (1st. Cir. 2008)).  Under Gall, we afford the district court wide discretion in sentencing. "[A]fter the court has calculated the [Guideline Sentencing Range],

---

[7]We also note that the district court explicitly detailed its consideration of the factors enumerated in § 3553(a), referencing the harm caused to MMS's owner, its insurance company, and the community.  The court also considered the support Marceau received from his family, as well as his past criminal history and drug use. Given the nature of the crime and Marceau's intentions to parlay the gun theft into money for drugs, the court reasonably concluded that Marceau was using "violence to create a possibility of more violence."

'sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" Id. at 73 (quoting Martin, 520 F.3d at 92). Ultimately, "'[T]he lynchpin of a reasonable sentence is a plausible sentencing rationale and a defensible overall result.'" Id. (quoting Martin, 520 F.3d at 96).

With respect to the disparity between the two sentences, § 3553(a)(6) calls upon sentencing judges to "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although this section is primarily aimed at national disparities, rather than those between co-defendants, Martin, 520 F.3d at 94, a district court may consider differences and similarities between co-defendants at sentencing. United States v. Vazquez-Rivera, 470 F.3d 443, 449 (1st Cir. 2006). While "a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences, . . . concerns could arise if two identically situated defendants received different sentences from the same judge." United States v. Cirilo-Munoz, 504 F.3d 106, 142 (1st Cir. 2007) (Lynch, J., dissenting) (internal citations and quotation marks omitted).

Here, the district court confronted the disparity head-on, noting "significant differences" between Tamiso and Marceau.[8] In the context of the Guideline calculation, the court noted that Marceau trafficked the weapons, possessed a firearm with an obliterated serial number, had a higher criminal history category, and was a "prohibited person" due to his drug use.  The court also considered that after the robbery, Tamiso had demonstrated remorse beyond that shown by Marceau, by apologizing personally and publicly to the victim, commencing restitution payments before they were ordered, and cooperating with the prosecution.  In light of these differences between the defendants, we have little difficulty finding that the district court properly exercised its "informed discretion," Martin, 520 F.3d at 98, while offering a "plausible rationale and reach[ing] a defensible result." Id.

For the reasons set forth herein, Marceau's sentence is **affirmed.**

---

[8]The court's comparison took place during Tamiso's sentencing, approximately one month after Marceau's.