# United States Court of Appeals
## For the First Circuit

No. 11-1713

UNITED STATES OF AMERICA,

Appellee,

v.

BRANDON CAPAROTTA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Tina Schneider, by Appointment of the Court, for appellant.
Renée M. Bunker, Assistant U.S. Attorney, with whom Thomas E.
Delahanty II, United States Attorney, was on brief, for appellee.

April 5, 2012

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, <u>**Circuit Judge**</u>. After pleading guilty to stealing firearms and possessing stolen firearms, defendant Brandon Caparotta received a sentence of fifty-four months' imprisonment. That sentence was based, in part, on the district court's finding that Caparotta qualified as a "prohibited person" who, because of his history of substance abuse, was barred from possessing firearms. Caparotta raises two arguments on appeal, both stemming from an interview with the Pretrial Services Office during which he disclosed information about his drug use at the time of the offense. That information, he claims, was obtained upon a promise of confidentiality, and it was therefore a violation of his due process rights and of Federal Rule of Criminal Procedure 32 for it to be included in his Presentence Investigation Report (PSR) and used against him at sentencing. He also claims that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, when his trial attorney allowed him to disclose the information. We find that Caparotta's due process claim is waived, that he has not demonstrated a violation of Rule 32, and that his Sixth Amendment claim fails. We therefore affirm.

During the early morning hours of August 23, 2010, Caparotta participated in a burglary of the Mill Creek Rod and Gun store, a federally-licensed firearms dealer in Orrington, Maine. Caparotta was arrested on August 26, 2010. On August 27, 2010, the Pretrial Services Office conducted an interview with Caparotta

-2-

(which we will refer to as the "bail interview") to determine whether he was eligible for release on bond. Caparotta's attorney was present at that interview, during which Caparotta discussed, among other things, his history of substance abuse.

After the interview, the Pretrial Services Office issued a Pretrial Services Report, dated August 31, 2010. According to the report, Caparotta admitted during the bail interview that he had begun using marijuana at age nine (some ten years prior), used it twice per week, and had last used it "two days ago."[1] He also admitted to heroin use beginning at age fourteen and ending three years prior and to Vicodin use beginning at age sixteen and ending four weeks prior. The report also indicated that Caparotta had received residential and outpatient treatment for substance abuse in the past. The following "Notice of Confidentiality" appeared at the top of the report: "Pursuant to Title 18 U.S.C. 3153(c)(1), ' . . . Information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purpose of a bail determination and shall otherwise be confidential.'"

On November 10, 2010, Caparotta pled guilty to one count of stealing firearms from the premises of a federally-licensed

---

[1] We assume this means two days before the interview with the Pretrial Services Office, which occurred on August 27, 2010. In any event, Caparotta does not dispute that he admitted to drug use within days of the August 23, 2010 offense.

-3-

dealer, in violation of 18 U.S.C. § 922(u), and one count of possessing stolen firearms, in violation of 18 U.S.C. § 922(j). Included in the prosecution's version of events, to which Caparotta consented when he pled guilty, were descriptions of several text messages he had sent to Robert Barker, who allegedly stored stolen guns for Caparotta and purchased guns from him. The text messages, obtained through a search of Barker's cell phone, revealed that Caparotta had been soliciting drugs and referencing his own drug use in the days immediately surrounding the crime.[2]

In December 2010, the Probation Office conducted a presentence investigation interview (which we will refer to as the "presentence interview") with Caparotta, at which Caparotta's attorney was also present. Again, Caparotta discussed his substance abuse history, but this time, on the advice of his attorney, he declined to discuss any drug use specifically in August 2010. In its ensuing PSR, dated December 29, 2010, the Probation Office noted that Caparotta had reported "a significant history of substance abuse," including that he used marijuana "'all day long' through August 2010." The PSR also discussed Caparotta's past use of several other drugs, including morphine, heroin, powder

---

[2] Specifically, three days before the burglary, on August 20, 2010, Caparotta sent Barker a text message asking Barker, "Can u get crack?" Three days after the burglary, on August 26, 2010, Caparotta sent Barker a message asking if Barker wanted to "burn a bowl," to which Barker responded, "I can't[,] gotta take a piss test after the weekend."

cocaine, crack cocaine, opiate pain killers, and LSD.  Though Caparotta's base offense level (BOL) would otherwise have been 12, see U.S.S.G. § 2K2.1(a)(7), the Probation Office recommended a BOL of 14 because Caparotta "was a regular user of and addicted to illegal drugs" at the time he committed the offense and thus qualified as a "prohibited person," see id. § 2K2.1(a)(6).[3]

We pause for a moment to explain that term.  The federal Sentencing Guidelines require a BOL of 14 if the defendant "was a prohibited person at the time [he] committed the instant offense." Id.  The Guidelines define "prohibited person" as any person described in 18 U.S.C. § 922(g) or (n).  Id. § 2K2.1 cmt. n.3. Section 922(g)(3), applicable here, bars firearm possession by a person "who is an unlawful user of . . . any controlled substance." 18 U.S.C. § 922(g)(3).  We have held that the term "unlawful user" in section 922(g)(3) "requires a 'temporal nexus between the gun possession and regular drug use.'"  United States v. Marceau, 554 F.3d 24, 30 (1st Cir. 2009) (citing United States v. Edwards, 540 F.3d 1156, 1162 (10th Cir. 2008)).  Thus, "an 'unlawful user' is one who engages in '[(1)] regular use [(2)] over a long period of

---

[3] The Probation Office also recommended a six-point enhancement for the number of firearms involved, see U.S.S.G. § 2K2.1(b)(1)(C), a two-point enhancement because Caparotta possessed multiple firearms that were stolen, see id. § 2K2.1(b)(4), and a four-point enhancement for using at least one stolen firearm while participating in the offense, see id. §§ 2K2.1(b)(6)(B), 2K2.1 cmt. n.14.  Including a three-level reduction for acceptance of responsibility, see id. § 3E1.1, the PSR thus recommended an overall offense level of 23.

time [(3)] proximate to or contemporaneous with the possession of the firearm.'" Id. (citing United States v. McCowan, 469 F.3d 386, 392 n.4 (5th Cir. 2006)).

Caparotta objected to the PSR's finding that he was a "prohibited person" on the grounds that he had not admitted, during the presentence interview, that he had been using drugs at the time of the offense in August 2010. In an Addendum to the PSR, filed on January 26, 2011, the Probation Office confirmed that, during his presentence interview, Caparotta had declined to discuss "drug use near the time of the possession of the firearms" but noted that he had "indicated that he was a regular drug abuser through July 2010, with the instant offense occurring on August 23, 2010." The Addendum also stated that, during his bail interview on August 27, 2010, Caparotta had "admitted that he had last smoked marijuana a couple of days ago and was using the drug twice a week."

In a February 23, 2010 sentencing memorandum, Caparotta expounded upon his objection to the use of his bail interview statements that he had last used marijuana "two days ago" and was using the drug twice a week in August 2010.[4] He invoked 18 U.S.C.

_____

[4] The government argues that Caparotta must have admitted to using marijuana in August 2010 during his presentence interview, because the PSR said that he "indicated that he used [marijuana] 'all day long' through August 2010," and the "all day long" characterization could not have come from his bail interview, during which he only admitted to using the drug "twice a week" in August 2010, with his last use "two days ago" (at least according to the Pretrial Services Report). However, the Addendum to the PSR: (1) acknowledged that Caparotta had declined, during his

§ 3153(c)(1), which states that "[e]xcept as provided in [18 U.S.C. § 3153(c)(2)], information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." Caparotta argued that there was no applicable exception in section 3153(c)(2) and that section 3153(c)(3) explicitly bars the admission of information made confidential under section 3153(c)(1) "on the issue of guilt in a criminal judicial proceeding." 18 U.S.C. § 3153(c)(3).

At a sentencing hearing on June 6, 2011, the district court found that Caparotta was an unlawful user of controlled substances and thus a "prohibited person." The court rejected Caparotta's argument that section 3153(c) bars the use of bail interview statements at sentencing, noting that "the language [of that section] is restricted to guilt" and "[w]e're not deciding the issue of guilt today." As for whether, considering the bail

---

presentence interview, to discuss his drug use near the time of the offense; (2) emphasized that he had admitted "that he was a regular drug abuser through July 2010"; but (3) did not state that he had admitted, during his presentence interview, to any drug use whatsoever in August 2010. Presumably, if Caparotta had stated during the presentence interview that he had used marijuana "all day long" through August 2010, the Probation Office would have made that clear in the Addendum. It thus seems likely that, during the presentence interview, Caparotta admitted to using marijuana "all day long" through July 2010, and the Probation Office mistakenly wrote "August 2010" in the PSR. In any event, we will assume here that Caparotta did not admit to any drug use in August 2010 during his presentence interview and that the district court therefore relied on his bail interview statements when it concluded that he used marijuana through August 2010.

interview information, Caparotta's drug use was sufficiently proximate to or contemporaneous with the offense to satisfy the "unlawful user" standard, see Marceau, 554 F.3d at 30, the district court recognized that there was "no direct evidence that [Caparotta] actually used marijuana . . . as he was holding the gun at the Mill Creek Rod and Gun shop" but nonetheless found that Caparotta's use of marijuana through August 2010 made it clear that he was an unlawful user.

The court thus used a BOL of 14 and applied the increases and reduction that the Probation Office had recommended.[5]  With a total offense level of 23 and a Criminal History Category of II, Caparotta's recommended guideline sentencing range was fifty-one to sixty-three months.  The court imposed a sentence of fifty-four months on each count, to run concurrently.  Had the district court not found Caparotta to be a "prohibited person," the government concedes that his offense level would have been at least four points lower.[6]  In this timely appeal, Caparotta challenges the

---

[5] See supra note 3.

[6] The district court would have started with a BOL of 12, see U.S.S.G. § 2K2.1(a)(7), and the two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) would not have applied, see id. § 2K2.1 cmt. n.8(A).  Caparotta argues that his offense level would have been six points lower without the "prohibited person" finding, because there would have been insufficient evidence for the district court to apply a six-level increase for possession of twenty-five or more firearms, see id. § 2K2.1(b)(1)(C), but the government disagrees.  We need not resolve that dispute, because we find that the court properly concluded that Caparotta was a "prohibited person."

district court's conclusion that he was a "prohibited person" and argues that he was denied the effective assistance of counsel when his attorney allowed him to disclose his August 2010 drug use during the bail interview.

We begin with the "prohibited person" classification. The first two prongs of the Marceau test are not at issue here; Caparotta does not contest the district court's finding that he engaged in regular drug use over a long period of time. 554 F.3d at 30. He takes issue only with the district court's determination that his drug use was "proximate to or contemporaneous with the possession of the firearm." Id. Specifically, he argues that it was a violation of his due process rights and of Federal Rule of Criminal Procedure 32 for the Probation Office to include in his PSR, and for the district court to consider at sentencing, his bail interview statements regarding his drug use in August 2010, which he says he provided based on a promise of confidentiality. He also argues that, without those statements, there was insufficient evidence of drug use proximate to or contemporaneous with the offense. We would normally review claims of legal error made at sentencing de novo, United States v. Wallace, 573 F.3d 82, 92 (1st Cir. 2009), but we do not do so here, because Caparotta has waived one of his arguments and forfeited the other, see United States v. Walker, 665 F.3d 212, 227 (1st Cir. 2011) (describing the difference between waiver and forfeiture).

-9-

Before the district court, Caparotta objected to the use of his bail interview statements on the grounds that no exception in section 3153 covered those statements, see 18 U.S.C. § 3153(c)(2), and that the statements could not be used to determine guilt, see id. § 3153(c)(3).[7] He did not raise an objection on due process grounds, nor did he invoke Rule 32. These are new arguments, raised for the first time on appeal, and we review such arguments, if at all, for plain error only. See, e.g., United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011). However, Caparotta's due process argument is simply not developed enough for us to decipher it; the argument consists of just two sentences and two cursory citations in his brief. It is therefore waived, and we will not address it here. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As for Caparotta's Rule 32 claim, he must satisfy the plain error standard, which requires him to demonstrate that: (1) an error occurred; (2) the error "was clear and obvious"; (3) the error affected his substantial rights; and (4) the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Ríos-Hernández, 645

---

[7] Caparotta has not renewed that argument on appeal, perhaps because he now recognizes that the statute explicitly carves out an exception whereby probation officers can use information obtained by Pretrial Services "for the purpose of compiling presentence reports." 18 U.S.C. § 3153(c)(2)(C); see also Pretrial Services Office Confidentiality Reg. 5(D).

F.3d at 462 (citation and internal quotation marks omitted).
Caparotta cannot clear that "high bar."  Id. at 463.

> The relevant subsection of Rule 32 reads as follows:
>
> (3) Exclusions. The presentence report must exclude the following:
>
> (A) any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;
>
> (B) any sources of information obtained upon a promise of confidentiality; and
>
> (C) any other information that, if disclosed, might result in physical or other harm to the defendant or others.

Fed. R. Crim. P. 32(d)(3).  Caparotta claims that his bail interview statements were "sources of information obtained upon a promise of confidentiality" and thus should have been excluded from his PSR pursuant to Rule 32(d)(3)(B).[8]  Id.  However, Caparotta has

_____

[8] The government has not raised the issue here, and we do not decide it today, but it is unclear whether the Rule 32(d)(3)(B) exclusion could ever apply to a defendant's own statements.  The plain language of the rule excludes from a PSR "any sources of information obtained upon a promise of confidentiality," not "any information obtained upon a promise of confidentiality."  Fed. R. Crim. P. 32(d)(3)(B) (emphasis added).  Thus, the exclusion seems to be designed to protect confidential sources who provide information to the Probation Office, not to ensure the confidentiality of statements that the defendant has made.  See, e.g., United States v. Streich, 560 F.3d 926, 934 (9th Cir. 2009) (Kleinfeld, J., concurring) (Rule 32(d)(3)(B) "protects someone who, for example, might tell something relevant to the sentence to the probation officer, but fears retaliation if his or her identity is revealed"); United States v. Hamad, 495 F.3d 241, 248 (6th Cir. 2007) (a district court's summary to the defendant of any information excluded from a PSR under Rule 32(d)(3)(B) "may not disclose the source of the information"); United States v. Trevino, 89 F.3d 187, 191 (4th Cir. 1996) ("Granted, the 'chilling effect' on contributors should be ameliorated somewhat now that sources of

presented no evidence that he was made a promise of confidentiality at the start of his bail interview, or that he made the statements at issue in reliance on that promise. Caparotta points to the confidentiality notice printed at the top of the Pretrial Services Report, but that report was published after Caparotta made the statements in question, so he could not have relied on the notice in providing the statements. Nor will we infer from the notice, as Caparotta urges us to, that the Pretrial Services Office must have made Caparotta a similar promise of confidentiality at the start of his bail interview.

Under the circumstances presented here, the Probation Office had the authority to use Caparotta's bail interview statements in preparing his PSR, see 18 U.S.C. § 3153(c)(2)(C), and the district court had broad discretion to determine whether the information was appropriate to consider at sentencing, see, e.g., United States v. Rivera-Rodríguez, 489 F.3d 48, 53 (1st Cir. 2007). There was no error, much less an error that was "clear and obvious." Ríos-Hernández, 645 F.3d at 462.

Finally, we turn to Caparotta's argument that his Sixth Amendment rights were violated when his trial attorney allowed him

---

confidential information can no longer be named in the PSR."); United States v. Moore, 958 F.2d 646, 652 (5th Cir. 1992) (referring to disclosure of "the name of a confidential source"); United States v. Charmer Indus., Inc., 711 F.2d 1164, 1171 n.7 (2d Cir. 1983) (under a prior version of the rule, the court could withhold from the defendant information contained in a PSR "to protect confidential sources").

to disclose his August 2010 drug use during the bail interview, which he claims led directly to the finding that he was a "prohibited person" under U.S.S.G. § 2K2.1(a)(6). Although Caparotta did not bring an ineffective assistance of counsel claim before the district court, "[w]e have recognized an exception to the preference for resolving ineffective assistance arguments via collateral attack where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim." United States v. Gonzalez-Arimont, 268 F.3d 8, 13 (1st Cir. 2001) (citation and internal quotation marks omitted). In this case, the record is sufficiently developed for us to conclude that Caparotta's claim lacks merit. See id. (disposing of a clearly meritless ineffective assistance claim on direct review).

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) his attorney's performance was deficient; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). If the defendant fails to satisfy either prong of the Strickland test, his claim fails. See id. at 697; Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) ("A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong.").

Here, Caparotta cannot establish prejudice, because there was ample evidence for the district court to conclude that he was a "prohibited person" even without the bail interview information. Caparotta admitted during his presentence interview that he had used marijuana regularly through July 2010, with the offense occurring in August 2010, and he sent text messages three days before the burglary and three days after the burglary soliciting drugs and referencing drug use. He has not argued that it would have been improper for the court to consider any of that evidence, which alone supported a finding that he used drugs "proximate to or contemporaneous with the possession of the firearm." Marceau, 554 F.3d at 30; see also 27 C.F.R. § 478.11 (defining "unlawful use" as use that "has occurred recently enough to indicate that the individual [was] actively engaged in such conduct" at the time of the offense, even if he did not use the substance "at the precise time" that he possessed the firearm). Thus, assuming simply for the sake of argument that Caparotta's attorney committed an error, Caparotta cannot demonstrate a reasonable probability that, but for the error, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

We do not mean to suggest that Caparotta's attorney's performance was deficient. Indeed, we highly doubt that it was, as there appear to have been valid tactical reasons why she allowed Caparotta to discuss his recent drug use with the Pretrial Services

Office.[9]  See id. at 689 (noting "the wide latitude counsel must have in making tactical decisions").  But we need not decide the issue, because we can dispose of Caparotta's ineffective assistance claim on the prejudice prong alone.  See id. at 697; Tevlin, 621 F.3d at 66.

For the foregoing reasons, we affirm.

---

[9] As the attorney explained in her sentencing memorandum, "In this case, Mr. Caparotta's reporting of his recent drug use was of utmost importance in his bond proceedings, in that having him subject to drug testing would allow the Pretrial Services Office to monitor his drug intake and ensure that he was not using drugs after having been released on bond.  Substances such as marijuana can stay in a person's system for up to thirty days, depending on past use patterns.  If Mr. Caparotta had refused to discuss his pattern of drug use, he may have been subject to pretrial detention."