# United States Court of Appeals
## For the First Circuit

No. 16-1144

UNITED STATES OF AMERICA,

Appellee,

v.

SIHAI CHENG,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, Chief U.S. District Judge]

Before

Howard, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Katherine C. Essington for appellant.
B. Stephanie Siegmann, Assistant U.S. Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

March 1, 2017

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

HOWARD, **Chief Judge**.   Sihai Cheng challenges the reasonableness of the 108-month incarcerative sentence he received for his role in an illicit scheme to export pressure transducers -- sensitive goods with nuclear applications -- from the United States to Iran through the People's Republic of China.  We affirm.

## I.

Between 2009 and 2011, Cheng caused at least 1,185 MKS Instruments, Inc. ("MKS") Model 722A pressure transducers to be exported from the United States to Iran via China.  Cheng placed numerous orders for the pressure transducers, participated in fraudulently obtaining U.S. export licenses for them, and was involved in stripping them of their MKS serial numbers and repackaging them in order to conceal the fact that they were being shipped in violation of U.S. export laws and the U.S. embargo against Iran.  Cheng engaged in this course of conduct despite knowing that the MKS pressure transducers would be used at Iran's uranium enrichment facilities to advance the country's nuclear weapons program.  Further, at various points, he expressed animosity towards the United States and invoked the specter of "WORLD WAR THREE" in an apparent effort to drum up sales.

After being extradited from the United Kingdom to the United States, Cheng pleaded guilty to six counts of a ten-count indictment, including: conspiracy to commit export violations in

violation of 50 U.S.C. § 1705; conspiracy to smuggle goods in violation of 18 U.S.C. § 371; and four counts of unlawfully exporting U.S. goods to Iran in violation of 50 U.S.C. § 1705.

The parties and the Probation Office agreed that U.S.S.G. §2M5.1 was the applicable Guideline and that -- after applying a three-level reduction for acceptance of responsibility under §3E1.1 -- the total offense level was 23. When combined with Cheng's Criminal History Category of I, this yielded an advisory Guidelines sentencing range of forty-six to fifty-seven months' imprisonment.

During Cheng's sentencing hearing, however, the district court upwardly departed six levels based on Application Note 2 to U.S.S.G. §2M5.1. Application Note 2 provides that an upward departure may be warranted where the following factors are "present in an extreme form:" "the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences." U.S.S.G. §2M5.1 cmt. (n.2). The district court explained that "[a]ll of those factors" were present to an extreme degree and observed that "[i]t's almost as if someone were writing [Application Note 2] for this case." The court therefore determined that the total offense level -- after the six-level upward departure -- was 29 and imposed a sentence of 108 months, the upper end of the Guidelines sentencing range.

This appeal timely followed.

## II.

On appeal, Cheng's overarching claim is that this 108-month incarcerative sentence is unreasonable. Specifically, he argues: that the sentencing court erred in departing from the Guidelines under Application Note 2; that his sentence was disproportionate to sentences in similar and related cases; and that his sentence was greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

Claims of sentencing error trigger a two-step inquiry in this court: "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Cheng objects only to the substantive reasonableness of his sentence.[1] Therefore, our review is for

---

[1] The government invites us to categorize Cheng's claim that the sentencing court erred in departing from the Guidelines under Application Note 2 as an attack on his sentence's procedural reasonableness. Cf. United States v. Torres-Rivera, 661 Fed. App'x 727, 730 (1st Cir. 2016) (reviewing for procedural reasonableness claim that district court erred by relying on the application note to §3B1.1 in imposing an above-guidelines sentence). Cheng did not object below, and our review would, as Cheng concedes, be for plain error if we accepted the government's invitation. However, because we understand Cheng to be arguing that Application Note 2 does not apply to him regardless of the procedures used, we will assume (favorably to Cheng) without deciding that the claim speaks to the substantive reasonableness of his sentence. Therefore, we are choosing to evaluate the

abuse of discretion, taking into account the totality of the circumstances. United States v. Zavala-Martí, 715 F.3d 44, 50 (1st Cir. 2013). Although Cheng did not object to the substantive reasonableness of his sentence below, we will assume arguendo that our review is nevertheless for abuse of discretion. Cf. United States v. Nuñez, 840 F.3d 1, 7 (1st Cir. 2016) (assuming without deciding that review of unpreserved claims of substantive unreasonableness is for abuse of discretion).

Considering Cheng's three arguments in turn, we find them unavailing.

### A.

Cheng contends that the district court erred in upwardly departing under Application Note 2 because (1) neither planning nor sophistication were present in extreme form and (2) the security interests of the United States had already been taken into account in calculating his base offense level.

The district court properly considered the entire scope of the illegal scheme, see U.S.S.G. §1B1.3, and could reasonably conclude from the record that Cheng was involved in an illegal procurement network that was both carefully planned and highly sophisticated, as it spanned three countries, involved more than five people, generated thousands of communications, and included

---

entirety of the sentence under the more lenient abuse of discretion standard. This does not change the outcome.

- 5 -

circuitous shipping routes and other considerable efforts to evade detection. There was no abuse of discretion, and we need go no further on this particular point.

Cheng argues, however, that even if planning and sophistication were present in extreme form, inappropriate double counting is afoot. Yet, contrary to Cheng's claims, the fact that the security interests of the United States are considered in determining the appropriate base offense level under U.S.S.G. §2M5.1 does not mean that those security interests cannot also be used in assessing whether an upward departure is justified under Application Note 2. We have said that "[s]ince double counting is often perfectly proper, the guidelines themselves are the most helpful aid in the task of separating permissible double counting from its impermissible counterpart." United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994) (citation omitted). "The Sentencing Commission has not been bashful about explicitly banning double counting in a number of instances. We believe the Commission's ready resort to explicitly stated prohibitions against double counting signals that courts should go quite slowly in implying further such prohibitions where none are written." Id. at 19-20 (collecting cases).

The Guidelines do not prohibit double-counting under U.S.S.G. §2M5.1. To the contrary, the Guidelines explicitly instruct courts to consider the degree to which an export violation

threatened national security in determining (1) the base offense level for export violations, (2) the appropriate sentence within the Guideline range, and (3) the applicability of a departure. U.S.S.G. §2M5.1.  Simply put, Application Note 2 recognizes that export violations pose varying degrees of threat to national security and that those violations posing the most significant threats may warrant upward departure.  This is entirely consistent with the principle that "a district court may rely on a particular fact for multiple sentencing purposes."  United States v. Sepúlveda-Hernández, 817 F.3d 30, 35 (1st Cir. 2016).

**B.**

Next, Cheng argues that his sentence was substantively unreasonable because it was disproportionate to sentences in similar and related cases.

Cheng complains that some participants in the instant scheme to illegally export MKS pressure transducers faced no consequences: some were not indicted, while others were subjects of a diplomatic arrangement.  Therefore, he asserts, "it was error for the district court judge to hold Mr. Cheng solely responsible for the illegal export of over a thousand pressure transducers where the export would not have been possible without the assistance" of others.  In the circumstances of this case, this "he did it too!" argument is unpersuasive.  Stated bluntly, the fact that the sentencing court had no ability to sentence certain

of Cheng's co-conspirators does not make Cheng's own sentence substantively unreasonable. Cf. United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009) ("A 'defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences.'" (quoting United States v. Marceau, 554 F.3d 24, 33 (1st Cir. 2009)). To hold otherwise would lead to absurd consequences.

Second, Cheng points to the thirty-four month incarcerative sentence received by Qiang Hu, who was involved in this same scheme and sentenced by the same district court judge. We have observed that "concerns could arise if two identically situated defendants received different sentences from the same judge." Id. No such concerns arise here, however, as the judge "confronted the [sentencing] disparity head-on." Id. Unlike Cheng, Hu was not involved in exporting any of the MKS pressure transducers to Iran and was unaware that transducers were being sent to Iran to assist in Iran's nuclear weapons program. Because Hu and Cheng were not identically situated, there is no reason to think that Cheng was entitled to the same sentence as Hu. See id.

Finally, Cheng's efforts to establish a national sentencing disparity falter. See United States v. Ayala-Vazquez, 751 F.3d 1, 32 (1st Cir. 2014) (noting that consideration of sentencing disparity primarily targets disparities among defendants nationally). Although Cheng points us to several cases

- 8 -

in which others received shorter sentences after committing export violations than he did, those cases are readily distinguishable. For example, defendants in those cases merely attempted to commit export violations, see United States v. Vaghari, 500 Fed. App'x 139 (3d Cir. 2012) (attempting to buy a centrifuge), exported far fewer items, see United States v. Tsai, 954 F.2d 155 (3d Cir. 1992) (exporting 11 items of military electronics), exported less sensitive items, see id., or exported items to end-users in countries other than Iran, see United States v. Zhen Zhou Wu, 711 F.3d 1 (1st Cir. 2013) (exporting to end-users in China). Disparity analysis is simply not appropriate if a defendant's "case 'was not in the same camp' as those he offer[s]." United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016) (quoting United States v. Garcia-Ortiz, 792 F.3d 184, 192 (1st Cir. 2015)). Therefore, we will not engage in it.

Because Cheng fails to show that the sentence imposed resulted in any kind of unwarranted or impermissible disparity, we decline to find that it was substantively unreasonable in this respect.

## c.

Lastly, Cheng argues that his sentence was substantively unreasonable because it was greater than necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a).

Both during the sentencing hearing and again in its thoughtful sentencing memorandum, the district court noted that it had considered the 18 U.S.C. § 3553(a) factors. Further, the court made specific, detailed findings with respect to the relevant § 3553(a) factors -- including both aggravating and mitigating factors -- and adequately explained its sentence. See United States v. Arroyo-Maldonado, 791 F.3d 193, 201 (1st Cir. 2015). As we have said before, "[a] sentence will stand so long as there is a 'plausible sentencing rationale and a defensible result.'" Reyes-Rivera, 812 F.3d at 89. "The district court had plenty of reason to sentence as it did here." Id.

Cheng contends in particular that the sentence is greater than necessary to serve a deterrent function -- either for Cheng himself or for others. As part of its sentencing rationale, the district court stated that "there is under the 3553(a) factors a need for deterrence . . . . You're not the first case I've seen like this, and I think there has to be a deterrent message sent out there, particularly if you know you're helping a nuclear weapons program." We have repeatedly recognized that deterrence is an important factor in the sentencing calculus. E.g., United States v. Díaz-Arroyo, 797 F.3d 125, 129 (1st Cir. 2015). Moreover, a district court can -- as it did here -- consider at sentencing the gravity and prevalence of the crime. See United States v. Madsen, 809 F.3d 712, 720 (1st Cir. 2016). Cheng's claim

that he was motivated "solely by financial greed" does little to help his cause.  See id. (affirming sentence as substantively reasonable in light of the defendant's "goal of personal profit at the expense of the broader societal good").

At bottom, Cheng disagrees with the district court's weighing of the various sentencing factors, but we find no abuse of the court's broad discretion.  Cf. Arroyo-Maldonado, 791 F.3d at 200 (finding no plain error when defendant disagreed with the sentencing court's weighing of factors).  Criminal defendants are entitled to a weighing of the relevant § 3553(a) factors, "not to a particular result."  United States v. Carrasco-de-Jesús, 589 F.3d 22, 29 (1st Cir. 2009).  Under the circumstances, imposition of a 108-month sentence was not substantively unreasonable.  Cf. Clogston, 662 F.3d at 592 ("There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes.").

## III.

For the forgoing reasons, we **affirm**.